Paul Alan Levy, pro hac vice
Public Citizen Litigation Group
1600 20th Street, N.W.
Washington, D.C. 20009
(202) 588-1000
plevy@citizen.org

Catherine R. Gellis, California Bar #251927
P.O. Box 2477
Sausalito, California 94966
(202) 642-2849
cathy@cgcounsel.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHRISTOPHER RECOUVREUR,<br>Plaintiff,<br><br>v.<br><br>CHARLES CARREON,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 3:12-cv-03435<br>**REPLY MEMORANDUM SUPPORTING MOTION FOR AWARD OF FEES FOR SEEKING SERVICE EXPENSES**<br><br>Date: January 17, 2013<br>Time: 1:30 PM<br>Courtroom #3, 17th Floor |

Plaintiff moved the Court to compel defendant Carreon to pay the expenses of obtaining service of process, following defendant's refusal to waive service, pursuant to Rule 4(d)(2)(A). Because defendant refused to pay the service expenses, plaintiff also sought an award of attorney fees for the motion to compel payment of service expenses under Rule 4(d)(2)(B). Docket Entry No. 32 ("DN 32"). After the motion to compel both payments was filed, defendant transmitted a Rule 68 offer of judgment that included "a total money judgment inclusive of costs in the amount of $725, being the sum of the filing fee and service costs claimed." Plaintiff accepted the offer of judgment, DN 38, making it unnecessary to discuss further the portion of the motion to compel payment that seeks an award of service expenses under Rule 4(d)(2)(A); however, the part of the motion that seeks an award of attorney fees under Rule 4(d)(2)(B) remains to be decided. Defendant Carreon offers a variety of objections to the motion — that his offer of judgment bars any award of attorney fees; that because he apologizes to the Court for not waiving service, the Court should excuse his conduct; and that the amount of fees sought is too high. None of these arguments is sound.

**A. Acceptance of the Offer of Judgment Does Not Defeat the Motion for Award of Attorney Fees.**

Plaintiff's acceptance of the offer of judgment does not obviate his claim for the attorney fees

incurred seeking payment of the expenses of service for several independent reasons.

First, an offer of judgment, when accepted, resolves the claims on the merits of the case, but does not necessarily reach ancillary issues involving attorney fees. Rule 4(d)(2) provides for an award of expenses and attorney fees unrelated to the ultimate decision on the merits — as shown by the cases cited in plaintiff's motion, the court "must impose" both service costs, and the fees incurred in seeking those costs, regardless of who prevails on the merits of the claims in the case. DN 32, at 4. The Advisory Committee Note for the 1993 Amendments that added the express requirement for awards of attorney fees explains the need for this provision: "In the absence of such a provision, the purpose of the rule would be frustrated by the cost of its enforcement, which is likely to be high in relation to the small benefit secured by the plaintiff." Here, Mr. Carreon took the position that he did not have to pay the expenses of service because he was going to prevail on the merits anyway and the costs of service would simply be refundable to him as a cost of defending the case. Levy Fourth Affidavit (attached), Exhibit AA. Although that stance had no basis in the law, in light of Mr. Carreon's previous threats to prolong litigation, plaintiff was impelled to move immediately for an award of service expenses and attorney fees. In the circumstances, there can be little question that the motion for an award of expenses (and attorney fees) prompted the offer of judgment. The Court should grant the fees sought because that is the only way to vindicate the purposes of Rule 4(d)(2)'s cost-and-fee-shifting provisions. [1]

Defendant's argument that the terms of the accepted offer of judgment renders moot the motion for an award of fees is likewise erroneous. Mootness is not an issue here. Although the case ended on the merits when defendant made an offer of judgment and plaintiff accepted that offer, there remains a live controversy between the parties about whether attorney fees should be awarded against defendant. To be

---

[1]Because the purpose of Rule 4(d)(2)(B) is comparable to a sanctions provision, one might well question whether an offer of judgment **could** give the plaintiff the Hobson's Choice of surrendering the impact of the sanction in order to gain complete satisfaction of the merits of his claim, any more than a plaintiff can avoid a sanctions claim by dismissing the case on the merits or otherwise depriving the court of jurisdiction of the merits. *Cooter & Gell v. Hartmarx Corp*, 496 U.S. 384, 395-398 (1990); *Chambers v. NASCO, Inc.*. 501 U.S. 32 (1991). Because the offer of judgment did not expressly address the issue of fees, not to speak of meeting the Ninth Circuit standard for clear waiver discussed below and thus posing such a choice for plaintiff, the Court need not reach that question.

sure, a claim for attorney fees does not preserve an Article III case or controversy over the merits, *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990), but the dispute over the obligation to pay fees is independent of the merits, and a court has jurisdiction to resolve that dispute even if the underlying case has become moot. *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir.1999). *See also GCB Commc'ns v. U.S. South Commc'ns*, 650 F.3d 1257, 1267 (9th Cir. 2011) (no loss of jurisdiction on mootness grounds where the defendant did not agree to pay everything plaintiff demanded) .[2]

Moreover, nothing in the offer of judgment purported to address the question of attorney fees, whether on the merits or on the issue of fees for seeking payment of service expenses.[3] In the Ninth Circuit as elsewhere, a Rule 68 offer of judgment is construed against the drafter. *Holland v. Roeser*, 37 F.3d 501, 504 (9th Cir. 1994), *accord Utility Automation 2000 v. Choctawhatchee Elec. Co-op.*, 298 F.3d 1238, 1244 (11th Cir. 2002); *Nordby v. Anchor Hocking Packaging Co.*, 199 F.3d 390, 391 (7th Cir. 1999). Moreover, the Ninth Circuit requires clear language to impose a waiver of attorney fees. *Erdman v. Cochise County*, 926 F.2d 877 (9th Cir. 1991). The offer of judgment in this case was entirely silent on the issue of attorney fees, and purported to extend only to resolution of the merits of the claims properly included in the judgment. Moreover, there was no claim in the complaint for attorney fees needed to compel payment of the expenses of service. Indeed, by characterizing the "costs" comprehended by the offer of judgment as being "the sum of the filing fee and service costs claimed," defendant left the attorney fees to be resolved by further proceedings.

Nor is defendant helped by the authority cited at pages 4-5 of his memorandum. In *Sanchez v. Prudential Pizza*, 2012 WL 1378649, at *1 (N.D. Ill. Apr. 20, 2012), the offer of judgment provided a lump sum that included "all of Plaintiff's claims for relief"; similarly, in *Chesny v. Marek*, 720 F2d 474, 476 (7th

---

[2]Although this reply does not further explain the justification for an award of service expenses, it remains to be seen whether proceedings in aid of execution will be required—Mr. Carreon has not yet made the payments promised in the offer of judgment, nor responded to inquiry about when he **will** pay. Levy Aff. ¶ 5.

[3]Plaintiff has notified defendant that he will file a motion for an award of attorney fees under 15 U.S.C. § 1117(a), unless defendant is willing to settle the fees issue. Mr. Carreon's memorandum in opposition to the application for an award of attorney fees under Rule 4 makes arguments about whether fees can be awarded on the merits in this case; this reply does not address those arguments, which are premature.

Cir. 1983), *rev'd on other grounds,* 473 U.S. 1 (1985), the offer of judgment was even more explicit, including "costs now accrued and attorney's fees." Here, by contrast, the language of the offer of judgment made clear that only "costs" were being resolved.

Finally, defendant argues that plaintiff's fee claim under Rule 4 should be rejected because the language of the Rule makes attorney fees part of the "costs" of the case. Mr. Carreon has misread Rule 4(d)(2), which has two separate provisions requiring the imposition of financial exactions on defendants who refuse to waive service. Rule 4(d)(2)(A) imposes the actual service expenses, and, in cases where the defendant also refuses to make the Rule 4(d)(2)(A) payments, Rule 4(d)(2)(B) imposes payment of the expenses of seeking the payments required by Rule 4(d)(2)(A), including attorney fees. This language is different from statutes such as 42 U.S.C. § 1988 that simply provide for awards of attorney fees "as part of the costs." The language in the offer of judgment was carefully limited to "costs of service," and did not purport to resolve the cost of obtaining payments of the expenses of a "motion required to collect those service expenses." For that reason, as well as the reasons discussed earlier in this section, plaintiff's claim for attorney fees under Rule 4(d)(2)(B) is not precluded by the acceptance of the offer of judgment.

**B. Defendant's Belated Apology Does Not Warrant Denial of Plaintiff's Attorney Fees.**

Defendant's opposition is accompanied by an affidavit in which he apologizes to the Court for imposing the need for proceedings connected with service by refusing to waive service. At the same time apologetic and defiant (such as where he declines to concede that plaintiff actually and properly sought waiver of service), Mr. Carreon suggests that he has suffered enough, that he has been vilified on the Internet and subjected to "a brutal onslaught," and that the pursuit of this litigation reflect "exaggerated dedication." This affidavit does not provide any valid basis for denying plaintiff's claim for attorney fees.

It may well be that, in retrospect, defendant Carreon regrets his conduct; certainly the private email he cites in his affidavit was beyond the pale. Still, it is understandable that his own conduct provoked some public criticism. First, he sent a demand letter to Matthew Inman on behalf of a client claiming defamation, even though the client had no valid grounds to complain. Then, when Inman made fun of Mr. Carreon by starting a fund-raising campaign to raise the demanded amount as a donation to charity—and after that fundraising effort went viral—Mr. Carreon brought a frivolous lawsuit against Inman, against the ISP that hosted the fund-raising campaign, and against the American Cancer Society and National Wildlife

Federation, the charities to whom Inman had promised to send the public's donations. This is the conduct that prompted the outpouring of negative commentary to which defendant's affidavit vaguely refer. And when plaintiff Recouvreur started an anonymous, satirical web site to comment about the controversy, Mr. Carreon threatened to sue both plaintiff **and** the company through which plaintiff had registered his domain name.

Although Public Citizen agreed to take this case because the litigation that Mr. Carreon was threatening related to several legal issues in which Public Citizen is interested, it hoped to avoid the need for litigation. Having supported Mr. Carreon's position in a recent case with an amicus brief, it hoped to avoid the need to litigate by reasoning with Mr. Carreon privately. Before any papers were filed, Mr. Levy telephoned Mr. Carreon to discuss the legal issues, calling his attention to the legal reasons why Mr. Carreon's claims could not possibly succeed, and then followed up the phone call with an enumeration of cases. It was in response to this effort to avoid litigation that Mr. Carreon responded with the strong threat to litigate, to string out litigation, to seek high levels of monetary relief, to delay filing suit for years, in the hope that Public Citizen would no longer be interested in representing Mr. Recouvreur by then, and to file in a jurisdiction that had not yet adopted the legal principles followed in the Ninth Circuit. In light of the fact that Mr. Carreon had already filed his frivolous suit against Inman, which was still pending (it was dismissed shortly after this action was filed, but not before forcing those defendants to incur substantial attorney fees), plaintiff and his counsel took Mr. Carreon's threats seriously, and accordingly filed this action for a declaratory judgment of non-infringement. Mr. Carreon's evasion of service, and his refusal to pay the expenses of service until this motion was filed, were simply a continuation of the pattern of abusing judicial process that created the need for this litigation in the first place.

As an officer of the Court, Mr. Carreon should have known better when he began his course of abusive conduct. Although Mr. Carreon now expresses regret that he chose not to execute a waiver of service, nor to "expose [him]self to service," nor to pay the service expenses when requested, and that this pattern of conduct subjected the **Court** to motion proceedings in connection with plaintiff's service efforts, such apologies do not excuse the extra work that his conduct needlessly imposed on plaintiff and his counsel. Plaintiff's counsel tried to avoid the need to effect service, not only mailing waiver of service forms but also expressly informing Mr. Carreon, by email, that a waiver of service form was coming in the

mail. Levy Affidavit ¶ 3 and Exh. BB. Counsel also tried to avoid the need to file this motion, by calling Mr. Carreon to meet and confer and discussing with Mr. Carreon the law that requires payment of service expenses. Mr. Carreon refused, first making spurious arguments, *id.* Exhibit AA, and then resorting to bluster, this time threatening to sue plaintiff's counsel for not acquiescing in his demands. Levy Third Affidavit (DN 35-1) ¶ 3. The attorney fee liability that Mr. Carreon now faces is the result.

**C. The Full Amount of Fees Should Be Awarded, Plus Fees for Time Spent on This Reply.**

Defendant objects to the amount of fees sought for two reasons – he objects to Mr. Levy's hourly rate of $700 on the theory that is it "based [solely] on the '*Laffey* matrix'" which was rejected in a 2010 case; and he objects to the total amount sought because, he argues, too much time was spent on the motion. Neither objection is sound.

Defendant's attack on the requested hourly rate of $700 for plaintiff's lead counsel is based entirely on a misleading citation of an opinion by Judge Wilken, as described by the Court of Appeals for the Ninth circuit in *Prison Legal Services v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). Although it is true, as defendant argues, that Judge Wilken rejected the *Laffey* matrix, Judge Wilken deemed its hourly rates **too low** to reflect accurately the market for attorney services in the Bay Area, and instead awarded fees at hourly rates **higher than** *Laffey* rates, an award that the Ninth Circuit affirmed. Moreover, Judge Wilken's opinion awarded fees for the senior attorney in that case at the rate of $740 per hour. *Prison Legal Services v. Schwarzenegger*, No. 4:07-cv-02058-CW, at 7 (N.D. Cal. Dec. 5, 2008). The $700 hourly rate sought in this case for Mr. Levy is thus well-supported by Mr. Carreon's own authority. Moreover, the hourly rate sought here was supported by an affidavit from an attorney who is familiar both with Mr. Levy's work and with the hourly rate customary in this District, DN 32-2; by a more general affidavit, filed in a different case by a lawyer who specializes in fee litigation in this District, and on evidence cited in that affidavit, DN 32-1, pp. 19-82; and on awards in other cases in this District, as cited in that affidavit and on page 5 of our opening brief.

As for the total amount of fees sought, Mr. Carreon cites *Ahern v. Northern Tech. Int'l Corp.*, 206 F.Supp.2d 418, 422 (W.D.N.Y. 2002), in which fees were denied for16.2 hours of work. By contrast, the amount of time sought for the motion filed here was only 6.7 hours, which is **less** than the time required and

granted for work on such motions in other cases cited in the motion for award of fees.[4] Less time could have been required had Mr. Carreon not made clear his intention to litigate each and every possible issue; hence, the motion anticipated many possible arguments, including issues to which Mr. Carreon had alluded in explaining why he was not willing to stipulate to any award of expenses for service.

Moreover, counsel anticipated that Mr. Carreon would contest the reasonable hourly rate, and the time listings accompanying Mr. Levy's affidavit reflects that he spent roughly 1.5 hours researching the issue of reasonable hourly rates in the Northern District of California. One reason why federal judges in the District of Columbia and the D.C. Circuit have insisted on the *Laffey* matrix as a presumptive measure of reasonable hourly rates is to avoid the need to reprove reasonable rates in each new case, a process that forces lawyers as well as judges to spend time on the litigation of that issue. Mr. Carreon objects to the invocation of the *Laffey* matrix, even though it is only part of the basis for the hourly rate sought in this case, but he cannot have it both ways. Because this district does not have a standard matrix of presumptively proper hourly rates that will be accepted so long as an application does not seek a higher rate, plaintiff's counsel was obligated to spend time proving a proper hourly rate.

The entire amount sought in plaintiff's motion should be awarded. In addition, as shown by the attached Levy and Gellis affidavits, Mr. Levy spent an additional 5 hours, and Ms. Gellis 2.2 hours, preparing this reply brief. An additional $4160 should be awarded for that work.

**CONCLUSION**

The motion for an award of attorney fees for the time required to seek payment of expenses should be granted.

Respectfully submitted,

/s/ Paul Alan Levy
Paul Alan Levy (pro hac vice)
Julie Murray

---

[4] In *Double S Truck Line v. Frozen Food Exp.*, 171 F.R.D. 251, 254 (D. Minn. 1997), cited in DN 32, the court awarded fees for eight hours of time spent litigating the motion for an award of service expenses. Similarly, in *Butler v. Crosby*, 2005 WL 3970740, at *4 (M.D. Fla. June 24, 2005), the court's order does not indicate the number of hours spent on the motion, but inspection of the PACER docket shows that that the fees sought for plaintiff's counsel, which were awarded in their entirety, were based on 8.7 hours of work. Docket No. 86, Exhibit E, Case No. 3:04-cv-00917-TJC-JRK (M.D. Fla).

Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-1000

/s/ Catherine S. Gellis

Catherine R. Gellis, California Bar #251927

P.O. Box 2477
Sausalito, California 94966
(202) 642-2849
cathy@cgcounsel.com

Attorneys for Plaintiff

December 27, 2012

## CERTIFICATE OF SERVICE

I hereby certify that I am causing a copy of this Memorandum, as well as the accompanying affidavits and exhibits, to be filed with the Court's ECF system, which will serve them on defendant Charles E. Carreon.

/s/ Paul Alan Levy
Paul Alan Levy