# EXHIBIT 1

CHASE

Keep this receipt as a record of your purchase.

**FOR YOUR PROTECTION SAVE THIS COPY**

**CASHIER'S CHECK**

**Customer Copy**

9039412787

01/10/2013

**Arizona**

**Remitter** CHARLES CARREON

**Pay To The Order Of** CHRISTOPHER RECOUVREUR

$ ***********725.00 ***

Drawer: **JPMORGAN CHASE BANK, N.A.**

NON NEGOTIABLE

**TERMS**

KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION.
PLEASE CONTACT CHASE TO REPORT A LOSS OR FOR ANY OTHER INFORMATION ABOUT THIS ITEM.

282111107 NEW 01/08 8810004306

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

**CASHIER'S CHECK**

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

CHASE

9039412787 91-2/1221

Date 01/10/2013

**Remitter** CHARLES CARREON

**Pay:** SEVEN HUNDRED TWENTY FIVE DOLLARS AND 00 CENTS

**Pay To The Order Of** CHRISTOPHER RECOUVREUR

$ ***********725.00 ***

Drawer: **JPMORGAN CHASE BANK, N.A.**

Michael Andrews

Senior Vice President
JPMorgan Chase Bank, N.A.
Phoenix, AZ

Security Features Details on Back.

⑈9039412787⑈ ⑆122100024⑆ 758661409⑈

# EXHIBIT 2

Home | About Us | Products | Continuing Education & Training | Press | Contact Us
Sign In | Register
Hello **Guest!** | View cart(0)

Bloomberg BNA

Login to Your Bloomberg BNA Product Subscription Go Customize

LEGAL & BUSINESS | TAX & ACCOUNTING | ENVIRONMENT, HEALTH & SAFETY | HUMAN RESOURCES

Home » News » Legal & Business News » Judges and Ethics Officials Disagree on Propriety of Some Litigation Tactics

Latest News
Legal & Business
Tax & Accounting
Environment, Health & Safety
Human Resources

# Judges and Ethics Officials Disagree on Propriety of Some Litigation Tactics

**Wednesday, June 20, 2012**

from ABA/BNA Lawyers' Manual on Professional Conduct™

Like 2 Send Tweet 1 Share +1 0

**Summary:** Bar authorities and courts sometimes give conflicting interpretations of what ethics rules permit or forbid on aggressive litigation tactics such as lawyers' use of deception, according to ethics expert Thomas E. Spahn.

**Significance:** Because bars and courts share authority to enforce ethics rules, lawyers should keep current on what both sources of authority have had to say on litigation ethics.

*By Samson Habte*

On some legal ethics issues, it seems, trial judges are from Mars and bar disciplinary officials are from Venus. Or vice versa.

The different interpretations that courts and ethics officials sometimes give to disciplinary rules was a prominent theme in remarks that ethics expert Thomas E. Spahn made June 13 during his continuing legal education presentation on litigation ethics at Bloomberg BNA.

Spahn, a partner of McGuireWoods in Tysons Corner, Va., said that courts tend to be more accommodating than ethics authorities when assessing the propriety of arguably "deceptive" investigative tactics.

On the other hand, he added, judges tend to be less forgiving than bar officials when considering the scope of lawyers' obligations to disclose adverse case law.

Accordingly, Spahn said, "Although lawyers should be wary of taking their cues from case law rather than ethics rules and opinions," attorneys nonetheless should keep up on emerging trends that reveal courts' and bars' dichotomous approaches to these issues.

Because judges and bar officials share responsibility for enforcing ethics rules, he said, lawyers should be cognizant of the fact that, in some instances, conduct frowned upon by bar officials will not necessarily draw the ire of judges. Alternatively, Spahn cautioned, lawyers should be aware that courts may sanction conduct that professional responsibility committees may have deemed proper in previous ethics opinions.

Spahn's program addressed a range of ethics quandaries faced especially by trial lawyers.

Some of these issues include: limitations on attorney speech when discussing cases with the media or criticizing judges in public; deceptive investigative tactics; the propriety of filing knowingly time-barred claims; and the scope of lawyers' duties to disclose unfavorable facts, adverse law, and unpublished decisions.

**'Deceptive' Tactics.**

The ethical boundaries of aggressive investigative tactics offer a clear example of disagreements between courts and bar groups, Spahn stated.

Courts have been more forgiving than bar officials, he said, when presented

Search
Go
Advanced Search | Search Tips

Related Products
ABA/BNA Lawyers' Manual on Professional Conduct™
United States Law Week®
Class Action Litigation Report®
Criminal Law Reporter™
Expert Evidence Report®
White Collar Crime Report™

ABA/BNA LAWYERS' MANUAL ON PROFESSIONAL CONDUCT
Stay informed on the laws and regulations that govern lawyers across all areas of practice.
START A FREE TRIAL

with complaints that lawyers unethically engaged in deceptive conduct to gather evidence of crimes, housing discrimination, or commercial misconduct.

Such tactics, he said, might involve prosecutors organizing “stings” against politicians suspected of bribery; civil rights lawyers directing clients to surreptitiously record conversations with property owners accused of housing discrimination; and plaintiffs' attorneys hiring investigators to pose as consumers in order to gather evidence of trademark violations and other commercial torts.

Spahn said that all of these actions arguably could be deemed black-letter violations of lawyers' professional obligations under four provisions in the ABA Model Rules of Professional Conduct: Rule 1.2(d) (assisting client fraud), Rule 4.1(a) (truthfulness in statements to others), Rule 5.3(c) (supervision of nonlawyers), and Rule 8.4(b) and (c) (prohibiting criminal or dishonest conduct). In relevant part, those rules provide that lawyers:

- cannot counsel clients to engage in fraudulent conduct;
- cannot make false statements to third persons in the course of representing clients;
- are responsible for the conduct of nonlawyers who commit ethics violations under their direction; and
- cannot engage in criminal conduct reflecting adversely on their honesty, or conduct “involving dishonesty, fraud, deceit or misrepresentation.”

Bar associations have endorsed deception by government lawyers engaged in criminal or national security investigations, often doing so through what Spahn characterized as “strained reading[s] of the ethics rules that they choose not to apply in the same way to private lawyers.”

And “a handful of states” have given their imprimatur to private attorneys' use of deceptive tactics to gather evidence of housing discrimination-- although the ABA has not officially done so, Spahn noted. See, e.g., Arizona Ethics Op. 99-11 (1999).

Courts, however, have been even more embracing of such “deceptive” conduct, according to Spahn, who said that judges have uniformly endorsed it in criminal investigations and regularly blessed it in housing discrimination cases.

Deception as Investigative Tactic

In his presentation on litigation ethics, Thomas Spahn cited several court decisions in which judges refused to uphold sanctions brought against attorneys who engaged in deceptive investigative tactics on behalf of a commercial client.

One such case was *Gidatex S.r.L. v. Campaniello Imports Ltd.*, 82 F. Supp.2d 119, 15 Law. Man. Prof. Conduct 481 (S.D.N.Y. 1999). There, a plaintiff's attorney directed investigators to pose as interior designers and record conversations with sales clerks employed by a furniture company accused of trademark violations.

“The court acknowledged that under relevant New York ethics rules, the salesclerks with whom the plaintiff's investigators spoke were 'represented parties' for purposes of the prohibition on ex parte contacts,” Spahn wrote in his program materials. “However, the court refused to find that plaintiff's lawyer had violated the prohibition.”

The *Gidatex* court acknowledged that the lawyer's conduct “technically satisfie[d] the three-part test generally used to determine whether counsel has violated the disciplinary rules” governing ex parte contacts. The court concluded, however, “that he did not violate the rules because his actions simply do not represent the type of conduct prohibited by the rules.”

Most importantly, Spahn said, judges have approved such tactics "in commercial settings," while "bars traditionally limit their analysis to socially worthwhile contexts such as housing discrimination tests." (*See box.*)

**When in Doubt, Disclose?**

Courts may be more lenient than bar officials in assessing the propriety of allegedly "deceptive" investigative tactics, but a different dynamic is evident in debates over other purported ethics violations, Spahn told the program attendees.

For example, he said, judges are less forgiving than ethics authorities in interpreting the scope of an attorney's duty to disclose adverse legal authority.

That obligation comes from ABA Model Rule 3.3(a)(2) and its state equivalents, which address attorneys' duties of candor toward a tribunal. The model rule instructs that a lawyer shall not knowingly "fail to disclose … legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel."

Spahn said that the ABA's approach on this issue evolved in a way that resulted in a steady "reduction in lawyers' disclosure duties" to courts.

Unfortunately for some attorneys, judges have not gone along with this evolution, according to Spahn. "[A]s with other issues involving the duty of disclosure, some courts require far more than the ethics rules require," he said, noting that "some courts take a remarkably broad approach."

The ABA's first pronouncement on lawyers' professional responsibilities--the 1908 Canons of Professional Ethics--contained a fairly narrow duty of candor to courts, Spahn observed. "In essence," he remarked, "the old Canon simply required lawyers not to lie about case law."

In 1935, the ABA issued its Ethics Opinion 146, which greatly expanded that obligation. Citing the lawyer's duty as an officer of the court to aid the "administration of justice," the opinion interpreted ethics principles as requiring a lawyer to "advise the court of decisions adverse to his clients' contentions that are known to [the lawyer] and unknown to his adversary."

The ABA "did not explain the reach of this duty," Spahn said, "but certainly did not limit the disclosure obligation to controlling case law or even to controlling jurisdictions."

In Ethics Opinion 280, released in 1949, the ABA expressly stated that the duty to disclose adverse authority extended so far as to encompass any cases--even those from other states--that might "reasonably be considered important by the judge sitting on the case."

That expansive declaration was pared back in subsequent years. The current scope of an attorney's obligation is described in Comment [4] to Model Rule 3.3, which explains that attorneys must disclose only "directly adverse authority in the controlling jurisdiction."

Accordingly, the rule on its face does not require the disclosure of adverse law from another state--unless, Spahn noted, "that state supplies the controlling law in the case."

However, in practice it appears that some judges prefer the former ethos on disclosure of adverse authority.

"[S]ome courts ignore the ABA Model Rules," Spahn wrote in his materials, "and instead essentially revert to the 1949 ABA legal ethics opinion" that required the disclosure of any authority "which would reasonably be considered important by the judge sitting on the case."

*By Samson Habte*

The ABA/BNA Lawyers' Manual on Professional Conduct is a joint publication of the American Bar Association Center for Professional Responsibility and Bloomberg BNA.

*Copyright 2012, the American Bar Association and The Bureau of National*

# EXHIBIT 3

RECEIVED IN CHAMBERS
U.S.D.C. Atlanta
JUN 23 2008
JAMES N. HATTEN, Clerk
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CHARLES SMITH,<br><br>Plaintiff,<br><br>v.<br><br>WAL-MART STORES, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION FILE<br><br>No. 1:06-cv-526-TCB |

**ORDER**

Before the Court are Plaintiff Charles Smith's motions for attorneys' fees [106, 110].[1] For the reasons set forth below, the Court DENIES Smith's motions.

## I. Background

This action arose from the contention of Defendant Wal-Mart Stores, Inc. that its registered trademarks "WALMART"; "WAL-MART"; and "WAL★MART"; its registered word mark "ALWAYS LOW PRICES. ALWAYS"; and its "well-known smiley face mark" were infringed by Plaintiff Charles Smith's anti-Wal-Mart merchandise.

---

[1] On March 31, 2008, Plaintiff filed an interim motion for attorneys' fees stating the requested amount and the rules and statutes pursuant to which he seeks the fees [106]. On May 5, 2008, he filed another motion for attorneys' fees pursuant to the same rules and statutes, this time supported by a legal brief and affidavits [110].

Smith had created various designs and slogans that incorporated the word "Walocaust," a word Smith invented by combining the first three letters of Wal-Mart's name with the last six letters of the word "holocaust."[2] In late July 2005, to help draw attention to his Walocaust concept and his views about Wal-Mart in general, Smith arranged for some of his designs to be printed on t-shirts and other items like mugs, underwear, camisoles, teddy bears, bumper stickers and bibs that could be purchased through www.CafePress.com. He also placed text on his CafePress account home page that included harsh statements about Wal-Mart. When his www.walocaust.com website became active, Smith also included a link from it to his CafePress account.

On December 28, 2005, and again on February 1, 2006, Wal-Mart wrote to Smith and to CafePress, asserting that Smith's Walocaust CafePress webpage violated Wal-Mart's trademark rights, and demanding

2 Smith created four basic Walocaust designs. One design depicted a blue stylized bird modeled to resemble a Nazi eagle grasping a yellow smiley face in the same manner that a Nazi eagle is typically depicted grasping a swastika. Above the bird image, the word "WAL★OCAUST" was printed in a blue font comparable to that commonly used by Wal-Mart. Two designs were text only: one design read, "I ♥ WAL★OCAUST[.] They have FAMILY VALUES and their ALCOHOL, TOBACCO and FIREARMS are 20% OFF"; and another design read, "WAL★OCAUST[.] Come for the LOW prices[,] stay for the KNIFE fights." The fourth was a graphical design that depicted the word WAL★OCAUST on a Wal-Mart-like storefront that also included the Nazi eagle image, a poster advertising family values and discounted alcohol, tobacco and firearms, and other images commenting negatively on Wal-Mart.

that they cease selling all products imprinted with his various anti-Wal-Mart designs. Wal-Mart also objected to Smith's registration and use of the domain name www.walocaust.com, demanding that Smith cease using the domain name and transfer ownership of it to Wal-Mart. In response, CafePress removed all of Smith's Wal-Mart-related merchandise from his online store so that only non-Wal-Mart-related merchandise remained available at www.cafepress.com/walocaust.

On March 6, 2006, Smith filed this action, seeking a declaratory judgment of his right to sell his Walocaust merchandise and demanding costs and attorneys' fees. He also updated his Walocaust website to denounce Wal-Mart for threatening to sue him.

On or about March 8, 2006, after filing his declaratory judgment complaint, Smith also registered the domain names www.wal-qaeda.com and www.walqaeda.com. "Wal-Qaeda" was another portmanteau Smith coined, this time combining the name "Wal-Mart" with "Al-Qaeda." Smith intended the word "Wal-Qaeda" as a comment on what he considered to be Wal-Mart's terrorist-like attack on his free speech through threats of litigation.

On a new site that was accessible via both www.wal-qaeda.com and www.walqaeda.com, Smith displayed various graphics incorporating his new word and also posted other anti-Wal-Mart slogans. Once he became certain that CafePress was open to carrying his new Wal-Qaeda concepts, he created a new Wal-Qaeda CafePress webpage where he again offered various items commenting on Wal-Mart.[3]

On March 28, 2006, Wal-Mart filed its answer and counterclaim, asserting various federal trademark claims and related state law claims against Smith for the Walocaust website and products. Wal-Mart

---

3 All of the products offered on Smith's new Wal-Qaeda CafePress webpage incorporated the word "Wal-Qaeda" except for three concepts: one imprinted with a graphic depicting a shoe hovering over a yellow unhappy face with the legend "FREEDOM-HATER-MART STOP Stomping on our free speech!"; another with the legend "BENTON★VILLEBULLIES ALWAYS"; and a third reading simply, "FREEDOM HATER MART."

The site offered two text-only designs that depicted the word "WAL-QAEDA" in a blue block letter font similar to Wal-Mart's: one with the legend "SUPPORT OUR TROOPS[.] BOYCOTT WAL-QAEDA" and another reading, "WAL-QAEDA[.] Freedom Haters ALWAYS."

The site also offered products imprinted with five other graphical concepts. One of those concepts was a revision of the Walocaust storefront design, altered to replace "WAL★OCAUST" with "WAL-QAEDA[.] THE DIME STORE FROM HELL"; to replace the Nazi eagle with "FREEDOM HATERS ALWAYS" and "2 days without a k[n]ife fight"; and to make other small changes. Another concept depicted an American flag in the shape of a United States map with the word "DECEASED" stamped over it. Above the flag was printed "WAL-QAEDA[.] THE DIME STORE FROM HELL," and under the flag appeared the phrase "CAUSE OF DEATH: A Dime Store." In the third concept, the slogan "ATTENTION WAL★QAEDA[.] THESE COLORS DON'T RUN" was imprinted over a modified American flag, and in the last two concepts, Hillary Clinton was named the "WAL-QAEDA Employee of the Year 1986-1992," and Chairman Mao Zedong was awarded the "WAL-QAEDA Human Resource Achievement Award."

Smith sold sixty-two shirts, including the fifteen purchased by one of the law firms representing Wal-Mart in this matter.

contended that Smith engaged in (1) trademark infringement in violation of 15 U.S.C. § 1114(1) and common law; (2) unfair competition in violation of 15 U.S.C. § 1125(a); (3) trademark dilution by tarnishment in violation of 15 U.S.C. § 1125(c); and (4) cybersquatting in violation of 15 U.S.C. § 1125(d). Wal-Mart also brought state law claims for (1) common law trademark infringement; (2) unfair competition in violation of O.C.G.A. § 23-2-55 and common law; (3) deceptive trade practices in violation of O.C.G.A § 10-1-370 *et seq.*; and (4) trademark dilution and injury to business reputation in violation of O.C.G.A. § 10-1-451(b).

In its prayer for relief, Wal-Mart sought an award of ownership of Smith's Wal-Mart-related domain names, an injunction precluding Smith from making commercial use of any designation beginning with the prefix "WAL," and an award of nominal damages. It also claimed costs and attorneys' fees under 15 U.S.C. § 1117.

On April 28, 2006, Wal-Mart amended its counterclaims to include the Wal-Qaeda website and products.

In May 2007, the parties made cross-motions for summary judgment and motions seeking to exclude each others' expert witness evidence. On July 24, 2007, the motions were submitted to the Court for consideration,

and on March 20, 2008, the Court issued its Order denying the motions to exclude expert witness evidence, granting Smith's motion for summary judgment, and denying Wal-Mart's motion for summary judgment. In the Order, the Court noted that the only possible remaining claim was Smith's prayer for attorneys' fees.

Smith has now moved for the attorneys' fees incurred in bringing his action and in defending against Wal-Mart's counterclaim. He seeks an award of $222,158.50 pursuant to Federal Rules of Civil Procedure 37(c)(2) and 54(d), 15 U.S.C. § 1117(a), and the Georgia anti-SLAPP (Strategic Lawsuit Against Public Participation) statute, O.C.G.A. § 9-11-11.1.

## II. Discussion

### A. Georgia's Anti-SLAPP Statute

Georgia's anti-SLAPP statute provides that the Court may sanction violation of the statute by ordering the offending party to pay the reasonable attorneys' fees of the prevailing party. O.C.G.A. § 9-11-11.1(b). Smith contends that he is entitled to an award of attorneys' fees pursuant to the statute because Wal-Mart's counterclaim against him constituted a SLAPP suit filed in retaliation for Smith's "statements in connection with

an issue under consideration or review by a . . . judicial body"—this Court. *See* O.C.G.A. § 9-11-11.1(c).

Smith is not entitled to attorneys' fees under Georgia's anti-SLAPP statute because he did not prevail on his anti-SLAPP claim. On February 21, 2007, the Court issued an order in which it found, "[a]fter careful review of the parties' filings as well as hearing oral argument on this issue, . . . Georgia's anti-SLAPP statute does not apply to this case." *Smith v. Wal-Mart Stores, Inc.*, 475 F. Supp. 2d 1318, 1324 (N.D. Ga. 2007). The Court expressly rejected Smith's argument that his use of "phrases such as 'Wal-Qaeda' and 'Freedom Haters, Always' constitute[d] statements made 'in connection with an issue' that is 'under consideration or review' in an official proceeding within the meaning of Georgia's anti-SLAPP statute." *Id.* Smith filed no motion for reconsideration.

Thus, the issue of whether Smith is entitled to attorneys' fees pursuant to O.C.G.A. § 9-11-11.1 was determined more than one year ago. The Court declines to reconsider its ruling at this late date. *See* LR 7.2E (providing that a motion for reconsideration of an order must be filed within ten days of its entry). Consequently, Smith's motion for attorneys' fees pursuant to O.C.G.A. § 9-11-11.1 is hereby DENIED.

### B. Lanham Act

Under the Lanham Act, the Court "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). In the Eleventh Circuit, "an 'exceptional case' is one that can be characterized as 'malicious, fraudulent, deliberate and willful,' or one in which 'evidence of fraud or bad faith' exists." *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1335 (11th Cir. 2001) (citations omitted); *accord Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1320 (11th Cir. 2001). Even when a case is "exceptional" under the Lanham Act, "the decision to grant attorney fees remains within the discretion of the trial court." *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994).

Smith argues that the "unusual facts" of this case made it "exceptional under the Lanham Act" and the Court should therefore award attorneys' fees to him pursuant to the Act.

Smith admits that the facts of the case do not make it an "exceptional case" under the Eleventh Circuit's established interpretation of § 1117(a) (Doc. 110-2 at 12). He argues nevertheless that the Court should apply the standards of other circuits or the standards that courts have applied in copyright cases.

Smith first contends that the Court should apply the Seventh Circuit's "oppressiveness" standard. *See S. Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001) (noting that a "suit is oppressive if it lacked merit, had elements of an abuse of process claim, and plaintiff's conduct unreasonably increased the cost of defending against the suit"). He then argues that the Court should find the case exceptional because he was "economically coerced" when he was forced to defend against Wal-Mart's groundless and unreasonable arguments. *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 816 (9th Cir. 2004) (remanding trademark case to the district court to remedy the lack of reasoning for denying an award of attorneys' fees); *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 144 (4th Cir. 2000) (allowing for an award of attorneys' fees on a trademark case based on a showing of "something less than bad faith"); *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 526-27 (D.C. Cir. 1985) (same). *See also Woodhaven Homes & Realty, Inc. v. Hotz*, 396 F.3d 822, 824 (7th Cir. 2005) (considering the compensation and deterrence value of an award of attorneys' fees to a party who prevails in the face of an unreasonable copyright action); *Brewer-Giorgio v. Bergman*, 985 F. Supp. 1478, 1484 (N.D. Ga. 1997)

(considering the value of compensating a prevailing party for the public value of establishing the boundaries of copyright infringement).

The Court is unconvinced by Smith's citation to foreign authority interpreting the Lanham Act. Although some circuits allow a prevailing party to recover Lanham Act attorneys' fees upon a showing of something less than bad faith, the going standard in the Eleventh Circuit is "fraud or bad faith."[4] *Lipscher*, 266 F.3d at 1320.

The Court finds Smith's analogy to copyright law no more compelling. As Smith admits, the Copyright Act is like the Lanham Act in that it provides the court discretion to award attorneys' fees to the prevailing party, but unlike the Lanham Act, the Copyright Act does not limit the award of fees to *exceptional* cases. Thus, Smith's authority for considering the compensation and deterrence value of an award of attorneys' fees—

---

[4] The Court also rejects Smith's argument that the Court should apply the Eleventh Circuit's alternative standard of allowing fees when the losing party acted in a "malicious, fraudulent, deliberate or willful" manner. As Smith acknowledges, the Eleventh Circuit applies the "malicious, fraudulent, deliberate or willful" analysis in the case of fee awards against an *infringer*. *See* Doc. 112 at 7 (citing Lone *Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 363 (11th Cir. 1997)). The "fraud or bad faith" analysis is applied against a non-prevailing *owner*, such as Wal-Mart. *See, e.g., Planetary Motion v. Techsplosion, Inc.*, 261 F.3d 1188, 1205 (11th Cir. 2001) (vacating an award of attorneys' fees to the trademark owner because the district court failed to determine whether the infringer acted in a "malicious, fraudulent, deliberate or willful manner"); *Tire Kingdom*, 253 F.3d at 1335 (applying the bad faith standard when ordering a plaintiff trademark owner to pay attorneys' fees to the prevailing defendant).

authority arising exclusively from copyright actions—is inapplicable to this Lanham Act case.

Thus, Smith must meet the Eleventh Circuit's standard of fraud or bad faith before the Court may award attorneys' fees pursuant to the Lanham Act. He has failed to do so. He makes no allegations of fraud, and in his brief he implicitly concedes that he has no evidence of bad faith. *See* Doc. 110-2 at 8 ("Wal-Mart's counterclaims may not have risen to the level of bad faith."); Doc. 112 at 7-8 (acknowledging that the Eleventh Circuit does not follow the "oppressive" or "deliberate" standard, but then arguing to that standard rather than to "bad faith"). As a result, Smith's motion for attorneys' fees pursuant to 15 U.S.C. § 1117(a) is hereby DENIED.

**C. Failure to Admit**

If a party "fails to admit what is requested under Rule 36 and . . . the requesting party later proves . . . the matter true," Rule 37(c)(2) requires the court to grant the attorneys' fees the requesting party incurred in making the proof. Fed. R. Civ. P. 37(c)(2). The requesting party has no right to attorneys' fees, however, when

(A) the request was held objectionable under Rule 36(a);

(B) the admission sought was of no substantial importance;

(C) the party failing to admit had reasonable ground to believe that it might prevail on the matter; or

(D) there was other good reason for the failure to admit.

Fed. R. Civ. P. 37(c)(2)(A–D).

Smith claims entitlement to attorneys' fees pursuant to Rule 37(c)(2) because Wal-Mart unreasonably refused to cooperate with his attempt to narrow the legal and factual issues presented to the Court and refused to admit many facts that were established during the course of the cross-motions for summary judgment.

**1. Admissions 1 and 2**

Smith's RFAs 1 and 2 asked Wal-Mart to admit that Smith had "not made a profit on the sales" of items bearing the term "Wal-Qaeda" or "Walocaust." Wal-Mart objected to the RFAs on the grounds that it was "vague and ambiguous in the use of the term 'profit.'"

Given that the first and only relevant[5] definition of "profit" in Black's Law Dictionary is "[t]he excess of revenues over expenditures in a business transaction," the Court agrees with Smith that Wal-Mart's objection to the term "profit" as "vague and ambiguous" was disingenuous at best. *See*

---

[5] The Court trusts that Defendant was not so confused by Plaintiff's use of the word "profit" in RFAs 1 and 2 that it believed Plaintiff intended to invoke a real estate term.

BLACK'S LAW DICTIONARY 1246 (8th ed. 2004). However, because "Smith's affidavit and supporting records[] established beyond cavil that Smith's revenues were significantly below his costs" and no conclusion in the Court's March 20, 2008 summary judgment Order rested upon its finding that Smith made no profit on his challenged endeavors, the Court also finds Defendant's failures to admit to be of so little importance as to be unworthy of the imposition of sanctions. *See* Doc. 110-2 at 10; Fed. R. Civ. P. 37(c)(2)(B).

### 2. Admissions 4-17, 25-56

Smith also claims that he is entitled to attorneys' fees for Wal-Mart's refusal to make admissions sought regarding infringement, dilution, and fair use with respect to each of the Walocaust designs (RFAs 4-11) and the Wal-Qaeda designs (RFAs 25-51) sold through CafePress, and for Wal-Mart's refusal to make admissions sought regarding confusion, infringement, dilution, fair use, and bad-faith intent to profit with respect to the challenged domain names (RFAs 12-17, 52-56). In support of his claim, Smith argues that Wal-Mart's answer to the RFAs, "As used in Smith's commercial activities, denied," was evasive and that because the Court so severely discounted its likelihood of confusion and dilution study,

Wal-Mart had no reasonable basis for refusing the RFAs. Again, the Court does not agree.

First, the Court finds that Wal-Mart's response to Smith's requests to admit that Smith's designs did not infringe or dilute Wal-Mart's marks and instead constituted fair use were not the sort of evasive responses that would warrant an award of attorneys' fees pursuant to Rule 37(c). By responding, "As used in Smith's commercial activities, denied," Wal-Mart narrowed the issues before this Court by implicitly admitting that Smith's non-commercial uses did not infringe or dilute Wal-Mart's marks and constituted fair use.

Furthermore, the Court finds that applying Rules 36 and 37 to RFAs 4-17 and 25-56 would be inappropriate. "Rule 36 is a time-saver, designed to expedite the trial and to relieve the parties of the cost of proving facts that *will not be disputed at trial.*" *Perez v. Miami-Dade County*, 297 F.3d 1255, 1268 (11th Cir. 2002) (emphasis in original; quotation and citation omitted). Here, rather than properly using the rule "to establish uncontested facts and to narrow the issues for trial," Smith instead used these admissions essentially to reissue the complaint and force

Wal-Mart to admit or deny allegations it had already answered. *See id.* at 1268-69.

In addition, Wal-Mart's refusal to admit to the RFAs would be proper if it had "reasonable ground to believe that it might prevail on the matter." *See id.* at 1269 (quoting Fed. R. Civ. P. 37(c)(2)(C)). Here, the Court found that Wal-Mart's dilution and likelihood of confusion study was so unreliable as to fail to create a genuine issue of material fact with regard to Wal-Mart's claims and that no reasonable juror would find consumers likely to confuse Wal-Mart with the Walocaust or Wal-Qaeda. However, the Court did not conclude that Wal-Mart was unreasonable in its belief that it might prevail on its claims. Wal-Mart hired a credentialed expert to design and interpret a survey that, on its surface, appeared to support Wal-Mart's claims. Moreover, by offering for sale products bearing portions of Wal-Mart's marks and by registering domain names that deliberately included the prefix "Wal" and linked to money-raising webpages, Smith committed acts that could have helped to support a finding that he infringed on Wal-Mart's marks. Consequently, the Court finds that no sanctions are warranted for Wal-Mart's refusal to admit RFAs 4-17 and 25-56.

### 3. Admissions 18-21, 57-60

Finally, Smith claims that he is entitled to attorneys' fees as a result of Wal-Mart's refusal to admit that his websites were not likely to be confusing to consumers or that consumers using search engines would be unlikely to experience confusion when they saw search results showing his websites. Smith claims that the truth of the facts in the RFAs was evident based on his affidavit and a "simple review of the relevant web pages and search engine results," and therefore Wal-Mart should have "made the admissions and saved Smith the trouble of proving and briefing the issues."

The Court finds that all of these requests for admission would have required speculation on Wal-Mart's part and therefore were inherently incapable of being admitted or denied as they were stated. In fact, given the novelty of Internet-related trademark cases and survey design, the Court relied heavily on Smith's uncontradicted expert witness evidence in analyzing the point-of-purchase portion of Wal-Mart's consumer survey. Thus, the Court finds that Wal-Mart had good reason for its failure to admit RFAs 18-21 and 57-60, and as a result, no sanctions are warranted. *See* Fed. R. Civ. P. 37(c)(2)(A), (C).

### 4. Conclusion

The Court finds that the exceptions to Rule 37(c)(2) applied to each of the RFAs that Wal-Mart refused to admit. Consequently, Smith's motion for attorneys' fees pursuant to Rule 37(c)(2) is hereby DENIED.

## III. Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff's motions for attorneys' fees [106, 110]. Defendant's motion for leave to file a surreply [113] is also **DENIED AS MOOT**.

IT IS SO ORDERED this 20th day of June, 2008.

Timothy C. Batten, Sr.
United States District Judge

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| RONALD J. RILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:08CV642-HEH |
| | ) | |
| JOHN DOZIER and DOZIER INTERNET LAW, P.C., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM ORDER
**(Granting Defendant's Motion to Dismiss Pursuant to Rule 12(b)(1))**

THIS MATTER is before the Court on Defendant's Motion to Dismiss Pursuant to Rule 12(b)(1) (Dk. No. 6), filed on October 29, 2008. The parties have filed extensive memoranda stating their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid in the decisional process. For the reasons stated herein, the Motion is GRANTED, and the case is DISMISSED.

Plaintiff filed his Complaint for Declaratory Relief and Damages ("Complaint") with the Court on October 2, 2008. Plaintiff seeks a declaration from the Court that Defendants have no cause of action against him in their independent action against Plaintiff, which Plaintiff removed to this Court from the Circuit Court for the County of Henrico, Virginia ("Dozier Action").

Plaintiff bears the burden of establishing the existence of federal subject-matter

jurisdiction. *Richmond, Fredericksburg, & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Plaintiff first contends that the Court has diversity jurisdiction over this case because the parties possess diversity in citizenship and the amount in controversy exceeds $75,000 pursuant to 28 U.S.C. § 1332. While the Complaint initially states that the amount in controversy exceeds $75,000, Plaintiff's prayer for relief makes clear that the amount in controversy falls far short of the statutory threshold. (Compl. ¶¶ 2, 22.) In addition to declaratory relief, Plaintiff seeks nominal damages, punitive damages in the amount of $1,000, and attorney's fees and costs. Even taking into consideration the $25,000 in attorney's fees Plaintiff contends he has incurred to date, the amount in controversy is well below the statutory requirement of $75,000. Accordingly, the Court finds that it lacks diversity jurisdiction over the case.

Plaintiff also purportedly invokes the Lanham Act as a basis for federal question jurisdiction under 25 U.S.C. § 1331. Plaintiff states that his use of the names "Dozier" and "Dozier Internet Law" on his websites do not amount to trademark infringement under the Lanham Act. (Compl., ¶ 20.) He also alleges that his use of the names constitute fair use and is protected by the First Amendment. (Compl., ¶ 20.) Plaintiff's assertions, however, do not confer subject-matter jurisdiction on the Court. They amount to nothing more than defenses to Defendants allegations in the Dozier Action and do not create an action arising under federal law. *See King v. Marriott Int'l, Inc.*, 337 F.3d 421, 424 (4th Cir. 2003).

In addition to his claims for damages, Plaintiff seeks declaratory relief from the Court stating that Defendants have no cause of action against him in the Dozier Action. The Declaratory Judgment Act, 28 U.S.C. § 2201, "does not provide a source of jurisdiction which is independent of substantive federal law." *Gibraltar, P.R., Inc. v. Otoki Group, Inc.*, 104 F.3d 616, 619 (4th Cir. 1997). In other words, for the Court to grant declaratory relief under the Declaratory Judgment Act, it must possess an independent basis for exercising federal subject-matter jurisdiction. *Id.* As stated, the Court lacks subject-matter jurisdiction over Plaintiff's claims.[1] Defendants' Motion to Dismiss is GRANTED pursuant to Rule 12(b)(1), and the case is DISMISSED.

The Clerk is directed to send a copy of this Order to all counsel of record.

It is SO ORDERED.

/s/
Henry E. Hudson
United States District Judge

Date: Nov. 20, 2008
Richmond, VA

---

[1]The Court must also decline to adjudicate this case under the abstention doctrine established in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). "Where timely and adequate state court review is available, a federal court sitting in equity must decline to interfere . . . where the 'exercise of federal review of the question in the case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *RF&P v. Forst*, 4 F.3d 244, 253 (4th Cir. 1993) (citing *Burford*, 319 U.S. at 332–34). The Court finds that the Dozier Action affords the parties timely and adequate state court review of these claims, and any equity ruling by the Court would improperly interfere with Virginia's efforts to address the claims.

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| DOZIER INTERNET LAW, P.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:08CV643-HEH |
| | ) | |
| RONALD J. RILEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**
**(Granting Plaintiff's Motion to Remand)**

THIS MATTER is before the Court on Plaintiff's Motion to Remand (Dk. No. 5), filed on October 29, 2008. Plaintiff filed its Complaint in the Circuit Court for the County of Henrico, Virginia, on September 4, 2008. Defendants removed the case to this Court on October 2, 2008, on the grounds of diversity and federal question jurisdiction. Plaintiff filed its Motion to Remand on October 29, 2008, and the parties have filed extensive memoranda stating their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid in the decisional process. For the reasons stated herein, the Motion is GRANTED, and the case is REMANDED to the Circuit Court for the County of Henrico, Virginia.

A defendant may remove an action to federal court if the action could have originally been filed in federal court. 28 U.S.C. § 1441. The burden of establishing federal jurisdiction falls upon the party seeking removal. *Mulcahey v. Columbia Organic*

*Chems.*, 29 F.3d 148, 151 (4th Cir. 1994). "Because removal jurisdiction raises significant federalism concerns, [the Court] must strictly construe removal jurisdiction." *Id.* (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941)). Moreover, "[i]f federal jurisdiction is doubtful, a remand is necessary." *Id.*

Defendants cite two grounds to support their removal of this case to this Court. First, Defendants contend that the Court has diversity jurisdiction over this case pursuant 28 U.S.C. § 1332. Second, Defendants maintain that the Court has federal question jurisdiction over the case because Plaintiffs have asserted a claim under the Lanham Act, 15 U.S.C. §§ 1114 *et seq.*

For the Court to have diversity jurisdiction, Defendants must establish that the parties possess diversity in citizenship and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. The Complaint alleges that Plaintiff is a Virginia corporation and that Defendants are Michigan corporations. Thus, the Complaint satisfies the diversity of citizenship requirement. The Complaint, however, alleges that the amount in controversy is only $55,000. Defendants urge this Court to find that the actual amount in controversy is more than $75,000 because the Complaint underestimates the amount of legal fees Plaintiff will incur and fails to account for the value of the injunction Plaintiff seeks.

The Court finds that the Defendants have failed to produce any persuasive evidence to support a finding by this Court that Plaintiff's claimed amount in controversy

was not made in good faith. Defendants provide only anecdotal evidence that Plaintiff's legal fees will exceed $10,000, and they have produced no evidence establishing that the value of the injunction sufficiently increases the amount in controversy to satisfy the statutory threshold amount of $75,000. In fact, the record before the Court suggests that injunction is no longer necessary because Defendants have removed the contested links from their website. (Pl.'s Reply, at 4.) Defendants have failed to satisfy their burden of establishing jurisdiction pursuant to 28 U.S.C. § 1332, and the Court finds that it lacks diversity jurisdiction over this case.

The Court will now turn to Defendants' claim that removal of the case was proper based on federal question jurisdiction. Defendants contend that, while Plaintiff's Complaint lacks any reference to a federal statute and arises out of the alleged infringement of a state-registered trademark, Plaintiff has asserted a trademark infringement claim under the Lanham Act, 15 U.S.C. § 1125(a). While the Fourth Circuit has not addressed the issue, other circuits have held that "removal of a trademark infringement action is improper when a plaintiff does not clearly state he is seeking relief under the Lanham Act." *In re Hot-Hed, Inc.*, 477 F.3d 320, 324 (5th Cir. 2007); *Vittaroz Corp. v. Borden, Inc.*, 644 F.2d 960, 964 (2d Cir. 1981); *La Chemise Lacoste v. Alligator Co.*, 506 F.2d 339, 346 (3d Cir. 1974). The Complaint makes no mention of the Lanham Act, and the Court can find no federal question apparent from the face of the Complaint.

Accordingly, Defendants have also failed to satisfy their burden of establishing

federal question jurisdiction. Plaintiff's Motion to Remand is GRANTED. The case is REMANDED to the Circuit Court for the County of Henrico, Virginia.

The Clerk is directed to send a copy of this Order to all counsel of record and to the Clerk for the Circuit Court for the County of Henrico, Virginia.

It is SO ORDERED.

/s/
Henry E. Hudson
United States District Judge

Date: Nov. 20, 2008
Richmond, VA

# EXHIBIT 6

ADRMOP,AO279,MEDTERM

**U.S. District Court**
**California Northern District (San Francisco)**
**CIVIL DOCKET FOR CASE #: 3:12-cv-02406-EMC**

iCall, Inc. v. Tribair, Inc et al
Assigned to: Hon. Edward M. Chen
Cause: 15:1 Antitrust Litigation

Date Filed: 05/11/2012
Jury Demand: Both
Nature of Suit: 840 Trademark
Jurisdiction: Federal Question

**Plaintiff**

**iCall, Inc.**

represented by **Charles Carreon**
Charles Carreon, Esq.
2165 S. Avenida Planeta
Tucson, AZ 85710
520-841-0835
Fax: 520-843-2083
Email: chas@charlescarreon.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Tribair, Inc**

represented by **John Christophe Kirke**
Donahue Gallaher Woods LLP
1999 Harrison Street
25th Floor
Oakland, CA 94612
510-451-0544 x266
Fax: 510-832-1486
Email: johnk@donahue.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Eric Reiher**

represented by **John Christophe Kirke**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter-claimant**

**Tribair, Inc**

represented by **John Christophe Kirke**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Counter-defendant**

**iCall, Inc.**

represented by **Charles Carreon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/11/2012 | 1 | COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR TRADEMARK INFRINGEMENT, TRADEMARK DILUTION, AND UNFAIR COMPETITION 1. Lanham Act 32 (15 U.S.C. 115 (a)) 2. Lanham Act 43 (15 U.S.C. 1125(a)) 3. Lanham Act 43(15 U.S.C.(c)) 4. Cal.Bus.&Prof.Code 17200, et seq. 5. Delcaratory relief: DURY DEMAND; against Eric Reiher, Tribair, Inc ( Filing fee $ 350.00, receipt number 34611074019.). Filed byiCall, Inc.. (Attachments: # 1 Civil Cover Sheet)(aaa, COURT STAFF) (Filed on 5/11/2012) (Entered: 05/14/2012) |
| 05/11/2012 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 8/8/2012. Case Management Conference set for 8/15/2012 10:00 AM. Signed by Magistrate Judge Nathanael M. Cousins on 5/11/12. (Attachments: # 1 NC Standing Order, # 2 Standing Order)(aaa, COURT STAFF) (Filed on 5/11/2012) (Entered: 05/14/2012) |
| 05/11/2012 | 3 | Summons Issued as to Eric Reiher, Tribair, Inc. (aaa, COURT STAFF) (Filed on 5/11/2012) (Entered: 05/14/2012) |
| 05/14/2012 | 4 | REPORT on the filing or determination of an action regarding:**TRADEMARK INFRINGEMENT** (cc: form mailed to register). (aaa, COURT STAFF) (Filed on 5/14/2012) (Entered: 05/14/2012) |
| 05/30/2012 | 5 | STIPULATION *REGARDING EXTENSION OF TIME TO ANSWER OR OTHERWISE RESPOND TO COMPLAINT* filed by Eric Reiher, Tribair, Inc. (Kirke, John) (Filed on 5/30/2012) (Entered: 05/30/2012) |
| 05/30/2012 | 6 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by iCall, Inc... (Carreon, Charles) (Filed on 5/30/2012) |

| | | |
|---|---|---|
| | | (Entered: 05/30/2012) |
| 05/31/2012 | 7 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge. (lmh, COURT STAFF) (Filed on 5/31/2012) (Entered: 05/31/2012) |
| 06/01/2012 | 8 | ORDER, Case reassigned to Hon. Edward M. Chen. Magistrate Judge Nathanael M. Cousins no longer assigned to the case.. Signed by Executive Committee on 6/1/12. (ha, COURT STAFF) (Filed on 6/1/2012) (Entered: 06/01/2012) |
| 06/07/2012 | 9 | CASE MANAGEMENT SCHEDULING ORDER: Case Management Statement due by 8/17/2012. Case Management Conference set for 8/24/2012 09:00 AM in Courtroom 5, 17th Floor, San Francisco.. Signed by Judge Edward M. Chen on 6/7/12. (bpf, COURT STAFF) (Filed on 6/7/2012) (Entered: 06/07/2012) |
| 06/07/2012 | 10 | STANDING ORDER. Signed by Judge EDWARD M. CHEN on 6/7/12. (bpf, COURT STAFF) (Filed on 6/7/2012) (Entered: 06/07/2012) |
| 06/19/2012 | 11 | STIPULATION *REGARDING EXTENSION OF TIME TO ANSWER OR OTHERWISE RESPOND TO COMPLAINT* filed by Eric Reiher, Tribair, Inc. (Kirke, John) (Filed on 6/19/2012) (Entered: 06/19/2012) |
| 07/03/2012 | 12 | CLERKS NOTICE RESETTING CMC FROM 8/24/12 TO 8/21/12 AT 9:00 A.M. Case Management Statement due by 8/14/2012. Case Management Conference set for 8/21/2012 09:00 AM in Courtroom 5, 17th Floor, San Francisco. THIS IS A TEXT ONLY DOCKET ENTRY; THERE IS NO DOCUMENT ASSOCIATED WITH THIS NOTICE.(bpf, COURT STAFF) (Filed on 7/3/2012) (Entered: 07/03/2012) |
| 07/06/2012 | 13 | ANSWER to Complaint with Jury Demand byEric Reiher, Tribair, Inc. (Kirke, John) (Filed on 7/6/2012) (Entered: 07/06/2012) |
| 07/06/2012 | 14 | COUNTERCLAIM against iCall, Inc.. Filed byTribair, Inc. (Kirke, John) (Filed on 7/6/2012) (Entered: 07/06/2012) |
| 07/25/2012 | 15 | ANSWER TO COUNTERCLAIM 14 Counterclaim byiCall, Inc.. (Carreon, Charles) (Filed on 7/25/2012) (Entered: 07/25/2012) |
| 08/14/2012 | 16 | Certificate of Interested Entities by Eric Reiher, Tribair, Inc (Kirke, John) (Filed on 8/14/2012) (Entered: 08/14/2012) |
| 08/14/2012 | 17 | NOTICE of need for ADR Phone Conference (ADR L.R. 3-5 d) (Carreon, Charles) (Filed on 8/14/2012) (Entered: 08/14/2012) |
| 08/14/2012 | 18 | JOINT CASE MANAGEMENT STATEMENT filed by iCall, Inc.. (Carreon, Charles) (Filed on 8/14/2012) (Entered: 08/14/2012) |
| 08/14/2012 | 19 | MOTION to Appear by Telephone *at Case Management Conference* filed by iCall, Inc.. (Attachments: # 1 Proposed Order) (Carreon, Charles) (Filed on 8/14/2012) (Entered: 08/14/2012) |
| 08/15/2012 | 20 | ADR Clerk Notice Setting ADR Phone Conference on 8/16/12 at 11:00 a.m. Pacific. Please note that you must be logged into an ECF account of counsel of record in order to view this document. (sgd, COURT STAFF) (Filed on 8/15/2012) (Entered: 08/15/2012) |
| 08/16/2012 | 21 | STIPULATION AND ORDER ALLOWING APPEARANCE BY PHONE. Signed by Judge Edward M. Chen on 8/16/12. (bpf, COURT STAFF) (Filed on 8/16/2012) (Entered: 08/16/2012) |
| 08/16/2012 | | ADR Remark: ADR Phone Conference held by RWS on 8/16/12. (sgd, COURT STAFF) (Filed on 8/16/2012) (Entered: 08/16/2012) |
| 08/23/2012 | 22 | Minute Entry: Initial Case Management Conference held on 8/21/2012 before Edward M. Chen (Date Filed: 8/23/2012), Case referred to mediation.. Case Management Statement due by 12/7/2012. Further Case Management Conference set for 12/14/2012 10:30 AM in Courtroom 5, 17th Floor, San Francisco. (Court Reporter Debra Pas.) (bpf, COURT STAFF) (Date Filed: 8/23/2012) (Entered: 08/23/2012) |
| 08/31/2012 | 23 | MOTION to Amend/Correct *Complaint Pursuant to Stipulation* filed by iCall, Inc.. Responses due by 9/14/2012. Replies due by 9/21/2012. (Attachments: # 1 Supplement Proposed FIrst Amended Complaint, # 2 Proposed Order Granting Leave to Plaintiff to File First Amended Complaint)(Carreon, Charles) (Filed on 8/31/2012) (Entered: 08/31/2012) |
| 08/31/2012 | 24 | NOTICE by iCall, Inc. *Notice of Unavailability* (Carreon, Charles) (Filed on 8/31/2012) (Entered: 08/31/2012) |
| 09/04/2012 | 25 | ORDER by Judge Edward M. Chen granting 23 Motion to Amend/Correct (per stipulation) ; Plaintiff is required to E-FILE the amended document (bpf, COURT STAFF) (Filed on 9/4/2012) (Entered: 09/04/2012) |
| 09/05/2012 | 26 | ADR Clerks Notice Appointing Jo S. Levy as Mediator. (af, COURT STAFF) (Filed on 9/5/2012) (Entered: 09/05/2012) |
| 10/12/2012 | 27 | AMENDED COMPLAINT *FOR INJUNCTIVE RELIEF AND DAMAGES FOR TRADEMARK INFRINGEMENT, TRADEMARK DILUTION, AND UNFAIR COMPETITION* against All Defendants. Filed byiCall, Inc.. (Carreon, Charles) (Filed on 10/12/2012) (Entered: 10/12/2012) |
| 10/12/2012 | 28 | MOTION for Preliminary Injunction filed by iCall, Inc.. Motion Hearing set for 11/16/2012 01:30 PM in Courtroom 5, 17th Floor, San Francisco before Hon. Edward M. Chen. Responses due by 10/26/2012. Replies due by 11/2/2012. (Attachments: # 1 Declaration OF ARLO C. GILBERT IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION, # 2 Declaration OF CHARLES CARREON IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION, # 3 Exhibit (s) 1 - 5, # 4 Exhibit (s) 6 - 10, # 5 Exhibit (s) 11 - 18, # 6 Proposed Order Granting Preliminary Injunction)(Carreon, Charles) (Filed on 10/12/2012) (Entered: 10/12/2012) |
| 10/19/2012 | 29 | CLERKS NOTICE resetting motion from 11/16/12 to 11/15/12 at 1:30 p.m. as to 28 MOTION for Preliminary Injunction . Motion Hearing set for 11/15/2012 01:30 PM in Courtroom 5, 17th Floor, San Francisco before Hon. Edward M. Chen. THIS IS A TEXT ONLY DOCKET ENTRY; THERE IS NO DOCUMENT ASSOCIATED WITH THIS NOTICE.(bpf, COURT STAFF) (Filed on 10/19/2012) (Entered: 10/19/2012) |
| 10/26/2012 | 30 | RESPONSE (re 28 MOTION for Preliminary Injunction ) filed byEric Reiher, Tribair, Inc. (Kirke, John) (Filed on 10/26/2012) (Entered: 10/26/2012) |
| 10/26/2012 | 31 | DECLARATION of ERIC REIHER in Opposition to 28 MOTION for Preliminary Injunction filed byEric Reiher, Tribair, Inc. (Related document(s) 28 ) (Kirke, John) (Filed on 10/26/2012) (Entered: 10/26/2012) |
| 10/26/2012 | 32 | Request for Judicial Notice re 30 Opposition/Response to Motion *for Preliminary Injunction* filed byEric Reiher, Tribair, Inc. (Related document(s) 30 ) (Kirke, John) (Filed on 10/26/2012) (Entered: 10/26/2012) |
| 11/01/2012 | 33 | CLERKS NOTICE RESTTING MOTION FROM 11/15/12 AT 1:30 P.M. TO 9:30 A.M. Set/Reset Deadlines as to 28 MOTION for Preliminary Injunction . Motion Hearing set for 11/15/2012 09:30 AM in Courtroom 5, 17th Floor, San Francisco before Hon. Edward M. Chen. THIS IS A TEXT ONLY DOCKET ENTRY; THERE IS NO DOCUMENT ASSOCIATED WITH THIS NOTICE. (bpf, COURT STAFF) (Filed on 11/1/2012) (Entered: 11/01/2012) |

| | | |
|---|---|---|
| 11/02/2012 | 34 | REPLY (re 28 MOTION for Preliminary Injunction ) filed byiCall, Inc.. (Attachments: # 1 Declaration Arlo C Gilbert, # 2 Declaration Charles Carreon, # 3 Exhibit part 1, # 4 Exhibit part 2)(Carreon, Charles) (Filed on 11/2/2012) (Entered: 11/02/2012) |
| 11/08/2012 | 35 | Brief re 34 Reply to Opposition/Response, *OBJECTIONS TO EVIDENCE SUBMITTED WITH REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION* filed byEric Reiher, Tribair, Inc. (Related document(s) 34 ) (Kirke, John) (Filed on 11/8/2012) (Entered: 11/08/2012) |
| 11/16/2012 | 36 | Minute Entry: Motion Hearing held on 11/15/2012 before Edward M. Chen (Date Filed: 11/16/2012) re 28 MOTION for Preliminary Injunction filed by iCall, Inc. Court took matter under submission and to issue order. (Court Reporter Belle Ball.) (bpf, COURT STAFF) (Date Filed: 11/16/2012) (Entered: 11/16/2012) |
| 11/19/2012 | 37 | ORDER RE: ATTENDANCE AT MEDIATION. Signed by Judge Elizabeth D Laporte on 11/19/2012. (knm, COURT STAFF) (Filed on 11/19/2012) (Entered: 11/19/2012) |
| 11/21/2012 | 38 | ORDER by Judge Edward M. Chen Denying 28 Plaintiff's Motion for Preliminary Injunction. (emcsec, COURT STAFF) (Filed on 11/21/2012) (Entered: 11/21/2012) |
| 11/29/2012 | 39 | ORDER RE: ATTENDANCE AT MEDIATION. Signed by Judge Elizabeth D Laporte on 11/29/2012. (knm, COURT STAFF) (Filed on 11/29/2012) (Entered: 11/29/2012) |
| 12/12/2012 | 40 | CASE MANAGEMENT STATEMENT *(UPDATED JOINT)* filed by Eric Reiher, Tribair, Inc. (Kirke, John) (Filed on 12/12/2012) (Entered: 12/12/2012) |
| 12/17/2012 | 41 | Minute Entry: Further Case Management Conference held on 12/14/2012 before Edward M. Chen (Date Filed: 12/17/2012). Plaintiff counsel informed the Court of Plaintiffs new investors in place. Defendant to confer with client regarding possibility of scheduling another mediation. Further CMC is set for 12/21/12 at 1:15 p.m. The Court to initial the conference call. (Court Reporter Catherine Edwards.) (bpf, COURT STAFF) (Date Filed: 12/17/2012) (Entered: 12/17/2012) |
| 12/21/2012 | 42 | CERTIFICATION OF MEDIATION Session by Mediator, Jo S. Levy; Mediation session held 12/5/2012; Case did not settle; Mediation process is complete. (cmf, COURT STAFF) (Filed on 12/21/2012) (Entered: 12/21/2012) |
| 12/21/2012 | 43 | Minute Entry: Further Case Management Conference held on 12/21/2012 before Edward M. Chen. Defendants do not wish to conduct another mediation. 10-day jury trial set for 1/21/14 at 8:30 a.m. Parties may proceed with depositions and written discovery in conformance with the Federal Rules of Civil Procedure. Instead of filing formal discovery motions, parties shall refer to this Courts standing order to meet and confer and submit joint letter on unresolved issues to the Court for expedited resolution. Further telephonic status conference set for 6/20/13 at 10:30 a.m. An updated status report shall be filed by 6/13/13. Court to issue case management and pretrial order. (Date Filed: 12/21/2012). (Court Reporter Kathy Wyatt.) (bpf, COURT STAFF) (Date Filed: 12/21/2012) (Entered: 12/21/2012) |
| 12/21/2012 | 44 | CASE MANAGEMENT SCHEDULING ORDER: Discovery due by 8/15/2013. Jury Trial set for 1/21/2014 08:30 AM in Courtroom 5, 17th Floor, San Francisco before Hon. Edward M. Chen. Pretrial Conference set for 1/7/2014 02:30 PM in Courtroom 5, 17th Floor, San Francisco before Hon. Edward M. Chen. Status Conference set for 6/20/2013 10:30 AM in Courtroom 5, 17th Floor, San Francisco before Hon. Edward M. Chen. 10-day Jury Trial set for 1/22/2014 08:30 AM in Courtroom 5, 17th Floor, San Francisco before Hon. Edward M. Chen. Jury Trial set for 1/24/2014 08:30 AM in Courtroom 5, 17th Floor, San Francisco before Hon. Edward M. Chen. Jury Trial set for 1/27/2014 08:30 AM in Courtroom 5, 17th Floor, San Francisco before Hon. Edward M. Chen. Jury Trial set for 1/28/2014 08:30 AM in Courtroom 5, 17th Floor, San Francisco before Hon. Edward M. Chen. Jury Trial set for 1/29/2014 08:30 AM in Courtroom 5, 17th Floor, San Francisco before Hon. Edward M. Chen. Jury Trial set for 1/31/2014 08:30 AM in Courtroom 5, 17th Floor, San Francisco before Hon. Edward M. Chen. Jury Trial set for 2/3/2014 08:30 AM in Courtroom 5, 17th Floor, San Francisco before Hon. Edward M. Chen. Jury Trial set for 2/4/2014 08:30 AM in Courtroom 5, 17th Floor, San Francisco before Hon. Edward M. Chen.. Signed by Judge Edward M. Chen on 12/21/12. (bpf, COURT STAFF) (Filed on 12/21/2012) (Entered: 12/21/2012) |


## PACER Service Center

### Transaction Receipt

| | | | |
|---|---|---|---|
| 01/14/2013 16:07:07 | | | |
| **PACER Login:** | cc1406 | **Client Code:** | carreon |
| **Description:** | Docket Report | **Search Criteria:** | 3:12-cv-02406-EMC |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

# EXHIBIT 7

CHARLES CARREON, ESQ. (127139)
2165 S. Avenida Planeta
Tucson, Arizona 85710
Tel: 520-841-0835
Fax: 520-843-2083
Email: chas@charlescarreon.com

Attorney for Defendant Charles Carreon

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER RECOUVREUR,<br>Plaintiff,<br>v.<br>CHARLES CARREON,<br>Defendants. | CASE NO. CV 3:12-cv-03435 RS<br>**STIPULATION CONTINUING MOTION FOR ATTORNEYS FEES, ESTABLISHING BRIEFING SCHEDULE, AND ALLOWING ALL PARTIES TO ATTEND MOTION HEARINGS TELEPHONICALLY** |

DRAFT

IT IS HEREBY STIPULATED, BY AND BETWEEN THE PARTIES AND THEIR COUNSEL OF RECORD, pursuant to L.R. 6-1(b), that:

1. The hearing on plaintiff's motion for an award of attorneys fees (Docket # 42) shall be continued from February 7, 2013 at 1:30 PM to May 9, 2013 at 1:30 p.m.

2. Defendant shall have to and until April 18, 2013 to file opposition to the said motion.

3. Plaintiff's reply brief in support of the said motion shall be due on or before April 25, 2013.

4. Counsel for both plaintiff and defendant reside in Washington D.C. and Tucson, Arizona, respectively; wherefore, it would impose an unreasonable hardship upon all parties to be required to appear personally, and the Court is requested to allow both parties' counsel to appear at the hearings on the motions telephonically.

Dated: January 10, 2013

CHARLES CARREON, ESQ.

By: /s/Charles Carreon
Charles Carreon
Attorney for Defendant Charles Carreon

Dated: January 10, 2013

PUBLIC CITIZEN LITIGATION GROUP

By:/s/Paul Alan Levy
Paul Alan Levy
Attorney for Plaintiff Christopher Recouvreur

DRAFT

**SIGNATURE ATTESTATION**

Pursuant to Local Rule 5-1(i)(3), I hereby attest that the concurrence in the filing of this document from all the signatories for whom a signature is indicated by a "conformed" signature (/s/) within this e-filed document was obtained and I have on file records to support this concurrence for subsequent production for the court if so ordered or for inspection upon request.

Dated: January 10, 2013

By: /s/Charles Carreon
Charles Carreon