Paul Alan Levy, pro hac vice
Public Citizen Litigation Group
1600  20th Street, N.W.
Washington, D.C. 20009
(202) 588-1000
plevy@citizen.org

Catherine R. Gellis, California Bar #251927
P.O. Box 2477
Sausalito, California 94966
(202) 642-2849
cathy@cgcounsel.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER RECOUVREUR,  )        No. 3:12-cv-03435
                         )
          Plaintiff,     )
                         )        **REPLY MEMORANDUM SUPPORTING**
          v.             )        **AWARD OF ATTORNEY FEES UNDER**
                         )        **THE LANHAM ACT**
CHARLES CARREON,         )
                         )
          Defendant.     )
                         )

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

1.    Plaintiff's Arguments Against Any Fee Award Lack Merit. . . . . . . . . . . . . . . . . . . . . . . . 1

2.    Plaintiff's Discovery Abuses Provide a Further Basis for Deeming This Case Exceptional. . . . . 5

3.    The Original Amount of Fees Sought Was Reasonable, and Additional Fees Should Be
      Awarded for Time Spent Responding to Discovery and Preparing This Reply Brief.. . . . . . . . . 7

4.    Awarding Fees Will Defend, Not Harm, Statutory and Constitutional Rights. . . . . . . . . . . . . 9

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**TABLE OF AUTHORITIES**

**CASES**

*Action Apartment Association v. City of Santa Monica*,
  41 Cal. 4th 1232, 163 P.3d 89 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Albion Pacific Property Resources v. Seligman*,
  329 F. Supp. 2d 1163 (N.D.Cal. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Animal Blood Bank v. Hale*,
  2012 WL 5868004 (E.D. Cal. Nov. 19, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Berman v. McManus*,
  483 Fed.Appx. 363 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Blum v. Stenson*,
  465 U.S. 886 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bosley Medical Co. v. Kremer*,
  403 F.3d 672 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

*Centennial Archaeology v. AECOM, Inc.*,
  688 F.3d 673 (10th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Committee for Idaho's High Desert v. Yost*,
  92 F.3d 814 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Craigslist, Inc. v. Mesiab*,
  2010 WL 5300883 (N.D.Cal. Nov. 15, 2010),
  *report and recommendation accepted*, 2010 WL 5300881 (N.D. Cal. Dec. 20, 2010) . . . . . . . . 8

*Craigslist, Inc. v. Naturemarket, Inc.*,
  694 F. Supp. 2d 1039 (N.D.Cal. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Eastwood v. Superior Court*,
  149 Cal. App. 3d 409, 198 Cal. Rptr. 342 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Gator.com Corp. v. L.L. Bean, Inc.*,
  398 F.3d 1125 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Gionfriddo v. Major League Baseball*,
  94 Cal. App. 4th 400, 114 Cal. Rptr. 2d 307 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Great Socialist People's Libyan Arab Jamahiriya v. Miski*,
  683 F. Supp. 2d 1 (D.D.C. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Impeva Labs v. System Planning Corp.*,
  2012 WL 3647716 (N.D.Cal., Aug. 23 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*IO Group, Inc. v. Jordan,*
  2010 WL 2231793 (N.D. Cal. June 1, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Jenzabar, Inc. v. Long Bow Group,*
  82 Mass. App. Ct. 648, 977 N.E.2d 75 (Mass. App. Ct. 2012). . . . . . . . . . . . . . . . . . . . . . . . 8

*Mattel v. Walking Mountain Productions,*
  353 F.3d 792 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*MGA Entertainment v. National Products Ltd.,*
  2012 WL 182072 (C.D.Cal. Jan 23, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Nadarajah v. Holder,*
  569 F.3d 906 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Petroleum Sales v. Valero Refining Co.-California,*
  2007 WL 2694207 (N.D. Cal. Sep 11, 2007),
  *aff'd,* 304 Fed. Appx. 615 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Phothera, Inc. v. Oron,*
  2009 WL 734282 (S.D.Cal. March 19, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Powertech Technology v. Tessera, Inc.,*
  2012 WL 3283420  (N.D.Cal. Aug. 10, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Pulliam v. Allen,*
  466 U.S. 522 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Rhoades v. Avon Products,*
  504 F.3d 1151 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Secalt S.A. v. Wuxi Shenxi Const. Machinery Co.,*
  668 F.3d 677 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Thomasville Furniture Indus. v. Thomas,*
  2012 WL 1476070 (W.D.N.C. Apr. 24, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Transgo, Inc. v. Ajac Transmission Parts Corp.,*
  768 F.2d 1001 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Van Skike v.  Director, Office of Workers' Compensation Programs,*
  557 F.3d 1041 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Vargas v. Transeau,*
  2008 WL 3164586 (S.D.N.Y. Aug. 6, 2008),
  *aff'd,*  352 Fed.Appx. 458 (2d Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Yahoo!, Inc. v. Net Games,*
  329 F. Supp. 2d 1179 (N.D.Cal. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**CONSTITUTION AND STATUTES**

United States Constitution

Article III. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
First Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10

Back Pay Act
5 U.S.C. § 5596. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Civil Rights Act,
42 U.S.C. § 1988. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Clean Air Act,
Section 304(d), 42 U.S.C. § 7604(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Copyright Code
17 U.S.C. § 411 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
17 U.S.C. § 412. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Declaratory Judgment Act,
28 U.S.C. § 2201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Freedom of Information Act
5 U.S.C. § 552(a)(4)(E). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Lanham Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8
Section 35, 15 U.S.C. § 1117. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Section 35(a)(3), 15 U.S.C. § 1117(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Longshore and Harbor Workers' Compensation Act,
Section 28(b), 33 U.S.C. § 928(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

California Civil Code Section 3344. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

The essential question at issue here is whether this is an "exceptional" case under the Lanham Act; the answer unequivocally is yes. This case began following an extraordinary email from defendant Charles Carreon to plaintiff Christopher Recouvreur's counsel— sent **after** counsel had already explained the legal flaws in Mr. Carreon's trademark and cybersquatting claims— declaring, in essence, that maybe not today, maybe not tomorrow, but someday, when (and where) it would be most inconvenient, expensive, and difficult to defend, Mr. Carreon would sue Recouvreur for exercising his free speech rights in commenting on Mr. Carreon's abusive litigious behavior with respect to another matter. Complaint, Exhibit F. The email amounted to a florid boast that Mr. Carreon—a member of the bar—would abuse the legal system to retaliate against plaintiff for his protected speech. This letter compelled plaintiff to sue preemptively to protect his rights and financial future.

15 U.S.C. § 1117(a)(3) provides, "The court in exceptional cases may award reasonable attorney fees to the prevailing party." That provision allows innocent people accused of trademark infringement to escape the ruinous effects of unfounded legal threats and lawsuits. Defendant Carreon has since admitted that he had no valid trademark claims, and he rightly surrendered on the merits soon after the case began, conceding that Recouvreur had been entirely within his rights to comment about Mr. Carreon at charles-carreon.com. Yet throughout this entire proceeding, both before and after offering judgment on the merits, defendant engaged in a pattern of abusive litigation tactics requiring extensive attorney time to address, thereby creating another reason why this case has been exceptional. Indeed, Mr. Carreon's abusive behavior has lived up to the promise he made in his boastful email: that whatever the merits, he could make litigation expensive, protracted, and inconvenient. At no point in his Opposition does defendant Carreon offer any justification for his actions, or any other plausible argument for why plaintiff's fee recovery would be unawarded. If defendant Carreon were to now prevail and avoid the financial consequences of his own behavior, it would announce that trademark bullies can saddle their victims with the crippling costs of defending against unmeritorious legal threats with impunity.

**1. Plaintiff's Arguments Against Any Fee Award Lack Merit.**

As shown in the opening brief, Ninth Circuit law makes a party who defeats a claim of trademark infringement entitled to an award of attorney fees if that party shows that the defeated claims were groundless or unreasonable. DN 42, at 4-5. Far from showing that his defeated trademark claims had even

the slightest chance of success, defendant admitted in the course of meeting and conferring about discovery that he understood that his trademark claims were precluded by the Ninth Circuit's decision in *Bosley Medical Co. v. Kremer*, 403 F.3d 672 (2005), that is why his discovery sought instead to ascertain whether he might have had a tenable claim for copyright infringement or under the California right of publicity. Levy Affidavit ¶ 6 and Exhibit HH.  Defendant now advances a potpourri of other objections to any fee award.

First, Mr. Carreon argues that the Lanham Act's attorney fee provision, section 35, 15 U.S.C. § 1117, was intended by Congress only to provide a remedy for claims by holders of registered trademarks. Opposition 10-13.  This argument is contradicted by controlling Ninth Circuit authority, including some cases that Mr. Carreon himself cited for other propositions.  Several circuits, including the Ninth, have held that fees are awardable in lawsuits over unregistered marks. *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1026 (9th Cir. 1985). *See also Committee for Idaho's High Desert v. Yost*, 92 F.3d 814, 825-826 (9th Cir. 1996). Moreover, because Mr. Carreon's asserted trademark claim rested on the registered trademark in his name, it is not clear how confining the application of the attorney fee remedy to cases involving registered marks would help him.

To the extent that Mr. Carreon argues that fees are not available to accused infringers who **defeat** trademark claims, that argument is foreclosed by *Mattel v. Walking Mountain Productions*, 353 F.3d 792, 816 (9th Cir. 2003).  That ruling reversed as an abuse of discretion a district court's denial of an attorney fee claim by an artist whose portrayal of Barbie dolls was alleged to have infringed Mattel's trademark.  Mr. Carreon's argument is also belied by the text of section 35, which allows fees for "the prevailing party," not just prevailing trademark owners, as well as by *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 525 n.12 (1994), where the Supreme Court said that the attorney fee provisions in each of the major intellectual property statutes — trademark, copyright and patent — should be construed in pari materia to provide even-handed treatment to attorney fee claims by prevailing infringement claimants and prevailing accused infringers.

Taking a different tack, Mr. Carreon suggests that he might have prevailed on a state-law claim for infringement of the right of publicity, based on the use of his name and likeness on the parody blog as originally published. Opposition 15-16.  Wholly apart from the fact that Mr. Carreon never asserted a right of publicity claim until he filed his opposition to the attorney fee application, and that plaintiff never sought a declaratory judgment of non-infringement of the right of publicity, any right of publicity claim would have

been frivolous. The right of publicity is a claim for **commercial** misappropriation—section 3344 of the California Civil Code provides a cause of action for "[u]se of another's name, voice, signature, photograph, or likeness for advertising or selling or soliciting purposes." The very case that Mr. Carreon cites, *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 198 Cal.Rptr. 342 (1983), repeatedly describes the cause of action as resting on "commercial purpose" and "for purposes of advertising or solicitation of purchases." *Id.* at 417-418. In addition, *Gionfriddo v. Major League Baseball*, 94 Cal.App.4th 400, 409-416, 114 Cal.Rptr.2d 307 (2001), holds that section 3344, as construed to be consistent with the First Amendment, does not apply to speech that is "noncommercial" under the First Amendment (even if, as in that case, there was advertising in the newspaper that used the name and likeness). Plaintiff "do[es]n't make any money on the Internet," Recouvreur Deposition Transcript, page 27 (Levy Affidavit Exhibit II); Mr. Carreon's opposition (page 4, final bullet point) concedes that the declaratory judgment protecting Recouvreur's blog brought him no pecuniary benefit, and the Carreon affidavit admits that the parody blog itself brought Recouvreur no pecuniary benefit. DN 56-1, page 4. Instead, defendant demeans the value of the declaratory judgment on the ground that, supposedly, the defense of non-commercial criticism against a trademark claim is simply not worth protecting through an award of attorney fees. Levy Affidavit Exhibit GG at 1, 4. Denying fees because the speech protected was noncommercial would be contrary to *Mattel v. Walking Mountain*, *supra.*[1]

Defendant's final argument against any award of attorney fees is that the California litigation privilege barred any lawsuit based on his claims of trademark infringement, or, at least, would bar an award of attorney fees resulting from those claims. Opposition 13-14. This objection fails for several independent reasons. First, state-law litigation privileges are not defenses to federal-law claims. *Impeva Labs v. System Planning Corp.*, 2012 WL 3647716, at \*5 n.4 (N.D.Cal. Aug. 23, 2012); s*ee also Berman v. McManus*, 483 Fed. App'x 363, 364 (9th Cir. 2012) (litigation privilege cited only to support dismissal of state claims). The declaratory judgment sought in this case was that the use of the domain name charles-carreon.com

---

[1] The Opposition (at 2, 16) refers in passing to the copyright in a photograph of Mr. Carreon that temporarily appeared on the parody blog. Because no copyright claim was threatened, and no declaratory judgment sought against such a claim, the reference is irrelevant. Moreover, fair use questions aside, although the Opposition asserts that Mr. Carreon owns the copyright in the photograph, there is no evidence on the point, nor is there any evidence that the copyright was registered during the few days that the photo appeared on the blog. *See* 17 U.S.C.§§ 411, 412.

constituted neither infringement of a federally-registered trademark nor cybersquatting under the Lanham Act.

Indeed, on defendant's theory, every one of the many declaratory judgment cases throughout the country would be subject to dismissal on litigation privilege grounds. One of the most common ways for federal intellectual property claims to end up in court is for an owner of intellectual property to claim infringement and threaten litigation, which makes it more difficult for the accused infringer to continue its use because third parties become concerned about being enmeshed in the dispute. The accused infringer then goes to court to seek a declaratory judgment of non-infringement, and the court decides whether the intellectual property owner's threats of litigation made the controversy sufficiently concrete to warrant Article III jurisdiction, and whether to exercise discretion to hear the case under the Declaratory Judgment Act. *E.g.*, *Rhoades v. Avon Products*, 504 F.3d 1151, 1157-1159, 1163-1165 (9th Cir. 2007); *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1127-1129 (9th Cir. 2005).

Additionally, the litigation privilege bars tort claims based on documents filed in court, not just pre-litigation lawyer letters. *Action Apartment Ass'n v. City of Santa Monica*, 41 Cal.4th 1232, 1241, 163 P.3d 89, 95 (2007). It is quite common in trademark and other intellectual property litigation for a counterclaim for non-infringement to be filed along with an answer to a complaint for infringement, citing the complaint itself to show the actual controversy. On Mr. Carreon's theory, such counterclaims would also violate the litigation privilege.

Moreover, the litigation privilege bars claims for damages under torts such as defamation based on the contents of the documents, but does not bar the use of pre-litigation correspondence as evidence to support claims based on underlying conduct, or to show the intent reflected in the correspondence. *Powertech Tech. v. Tessera, Inc.*, 2012 WL 3283420, at *8 (N.D.Cal. Aug. 10, 2012); *Photothera, Inc. v. Oron*, 2009 WL 734282, at *6 (S.D.Cal. March 19, 2009). Here, Mr. Carreon's demand letter and email were cited to show the existence of an actual controversy between the parties; such use of the communications is simply not a proper basis for invoking the litigation privilege.

Finally, even if the litigation privilege would bar a claim for damages based on Mr. Carreon's threats of litigation, immunity from damages claims does not bar a claim for attorney fees incident to a claim for equitable relief, such as a suit for a declaratory judgment. *Pulliam v. Allen*, 466 U.S. 522, 543-544 (1984).

**2. Plaintiff's Discovery Abuses Provide a Further Basis for Deeming This Case Exceptional.**

Defendant Carreon originally sought an extension of time to oppose the motion for an award of attorney fees for two purposes—to seek amicus support from the International Trademark Association ("INTA") and others, and to pursue discovery. DN 45, at 7. The Court's ruling on this motion did not expressly authorize discovery, but plaintiff concluded that a fair reading of the Court's order was that some discovery was permitted, although not "extensive" discovery. There is no reason to believe that Mr Carreon made any substantial efforts to seek amicus support from INTA, *see* Levy Affidavit ¶ 4, but he did pursue discovery. Although the groundlessness of Mr. Carreon's trademark claims is alone a sufficient basis to find this case exceptional, the abusive manner in which defendant took advantage of the leeway that the Court afforded him provides an additional ground for awarding fees.

Defendant served requests for admissions, interrogatories and document requests on plaintiff, took plaintiff's deposition, and sent subpoenas to Public Citizen Litigation Group, where plaintiff's lead counsel Mr. Levy is employed, as well as to Kenneth White, a lawyer in private practice in Los Angeles who was a member of the legal team assisting plaintiff in this case. The third-party subpoenas demanded production of all written communications among counsel and with the plaintiff, and insisted on a detailed privilege log identifying each such communication; the respective law firms declined to provide either the documents or a document-by-document log, citing the attorney-client privilege and work-product protection. The fact that Mr. Carreon has made no effort to contest these responses suggests that he knew that his subpoenas were improper. Mr. White was subpoenaed even though he did not enter an appearance, and despite the fact that no attorney fees are sought for his considerable time expenditures.[2]

The written discovery directed at plaintiff ranged widely into many areas completely unrelated to the

---

[2]In footnote 1 of his Opposition, defendant misleadingly asserts that Mr. White refused to produce documents on the ground that Mr. Carreon bears animus towards him. In fact, Mr. White's objection clearly and specifically asserted both the attorney-client privilege (to the extent the documents reflect communications with plaintiff) or the attorney work product doctrine (to the extent the documents reflect communications with other attorneys assisting plaintiff), but **also** asserted that all the documents were so clearly protected that a detailed privilege log would be pointless busywork, and that the demand for a detailed log was motivated by animus. Exhibit 2 to Carreon Decl. at 3-4. Defendant's mischaracterization of Mr. White's objections to a demand for patently privileged materials is an example of the bad-faith litigation tactics that support an award of fees in this case.

attorney fees issues. Defendant asked plaintiff to disclose all of his writings about defendant, to disclose communications with other individuals with whom defendant is at odds, and to disclose information about his worklife. Recognizing that defendant Carreon and his wife are active bloggers who make strong accusations against people, plaintiff's counsel refused on relevance grounds to allow defendant to use discovery to find more grist for their blogging mill. Such irrelevant questions were repeated at the deposition of plaintiff, as Mr. Carreon tried to obtain information about plaintiff's work history and schooling, about his online activity completely unrelated to his parody blog about Mr. Carreon, and even about his political beliefs. Exhibit II, at 7-11, 14-17, 62-65. Plaintiff's counsel refused to allow such inquiries. Again, the fact that Mr. Carreon has made no effort to compel discovery, and did not offer any relevance theories that could justify his questions, Levy Affidavit ¶ 6 and Exhibits HH and II, reflects his awareness that his use of discovery was improper.

However, within hours of the end of the Recouvreur deposition, the substance of plaintiff's answers to several questions showed up in an Internet post authored by Tara Carreon, placed on an Internet discussion forum that Mr. Carreon operates with his wife. Compare Exhibit GG, at 39, 51, with Levy Affidavit ¶ 8 and Exhibit JJ. The Opposition never shows how these questions or answers bear on arguments against a fee award, raising the possibility that the purpose for asking the questions may have been to enable use of the answers on the blog.

Finally, after agreeing to a protective order forbidding the public disclosure of the dollar amount of the salary of plaintiff's lead counsel, Mr. Carreon placed a document revealing that information in the record, and crafted a portion of his Opposition to highlight the monetary figure. Levy Affidavit ¶¶ 9-10 and Exhibit KK. Because the protective order was agreed to less than two weeks before the filing, and was addressed **solely** to this piece of information, and because Mr. Carreon's invocation of the amount was so calculated, Mr. Carreon's claim that the disclosure was inadvertent, Levy Affidavit, Exhibit KK, Carreon March 19, 2013 email, *see also* DN 55, is incredible. The disclosure forced Mr. Levy to spend time getting the documents locked on the Court's ECF site, chasing down authoritative personnel associated with RECAP, the free public archive into which ECF documents are commonly downloaded and getting the papers removed from that database, and tracking down bloggers who had obtained the information and asking them to protect his privacy as well. *Id.* ¶¶ 11-12 and Exhibit FF.

In sum, Mr. Carreon's abuse of the discovery that the Court authorized provides an additional reason to recognize this case as exceptional and thus to award attorney fees.

### 3. The Original Amount of Fees Sought Was Reasonable, and Additional Fees Should Be Awarded for Time Spent Responding to Discovery and Preparing This Reply Brief.

Defendant Carreon attacks the amount of fees sought, primarily because he objects to the hourly rate sought for plaintiff's lead counsel, Mr. Levy. Defendant advances two separate theories. His main contention is that the market rate approach of *Blum v. Stenson*, *Hensley v. Eckerhart*, and similar cases applies only to civil rights cases, not to trademark cases. He also takes exception to citation of the *Laffey* matrix as one of several bases for fees. Neither objection is sound.

First, Mr. Carreon argues that because Mr. Levy is a public interest lawyer, fees for his time should not be awarded at ordinary market rates, but on some other basis, although his brief never explains what that other basis might be. Opposition 8-9. Defendant cites no authority for this proposition, and it is squarely contradicted by *Blum v. Stenson*, 465 U.S. 886, 895-896 (1984). As the Tenth Circuit recently explained in *Centennial Archaeology v. AECOM*, Inc., 688 F.3d 673 (10th Cir. 2012):

> In fee-shifting statutes the term attorney fees (or its equivalent) has become a term of art. . . . *Blum* is but one of countless examples that the courts construe the term attorney fees to mean, not the amount actually paid or owed by the party to its attorney, but the value of attorney services provided to the party.
> * * * *
> The Supreme Court has treated in the same manner attorney fees under the Civil Rights Act, [citations omitted] and under the Clean Air Act [citations omitted]. And the courts of appeals have done likewise under various other statutes. [citations omitted for cases involving the Equal Access to Justice Act, Lanham Act, Back Pay Act, removal statute, MSPB proceedings, the Freedom of Information Act, and Copyright Code].

*Id.* at 679-680 (citations omitted).

The Ninth Circuit, in particular, has held that the market rate approach of *Blum v. Stenson* applies to fees in excess of EAJA's statutory cap, even when counsel work for a non-profit organization,[3] and other judges in the Northern District of California have applied the *Blum* market rate approach in cases under many non-civil-rights authorities allowing for fee recovery, including the Lanham Act, compensatory fees

---

[3] *Nadarajah v. Holder*, 569 F.3d 906, 916 (9th Cir. 2009); *see also Secalt S.A. v. Wuxi Shenxi Const. Machinery Co.*, 668 F.3d 677 (9th Cir. 2012) (applying market rate approach in Lanham Act case, although without specifically quoting language about non-profit counsel); *Van Skike v. Director, Office of Workers' Compensation Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009) (same, under the Longshore Act),

1    for improvident removal, discovery sanctions, and fees awarded pursuant to contract.[4] In sum, the *Blum v.*

2    *Stenson* market rate analysis is a general rule that is not limited to fees sought under the civil rights statutes

3    that were at issue in *Blum* itself.

4         Defendant's other complaint about Mr. Levy's hourly rate is that plaintiff has invoked *Laffey* here.

5    He argues that the *Laffey* rates are applied only in civil rights cases, and that a party represented by Mr. Levy

6    applied for fees at a different hourly rate in a different case, *Jenzabar, Inc. v. Long Bow Group*, 82 Mass.

7    App. Ct. 648, 977 N.E.2d 75 (Mass. App. Ct. 2012). Opposition 16 & n.22. The argument that *Laffey*'s

8    relevance is limited to civil rights cases is simply wrong. In the past three years alone, federal judges in five

9    different cases outside the District of Columbia, three of them in this District, have looked to *Laffey* rates

10    to guide their hourly rate rulings in cases having nothing to do with civil rights.[5]

11         Moreover, in this case as *Jenzabar*, the *Laffey* rates are simply pieces of evidence cited in support

12    of the claimed hourly rate. Were this case litigated in the District of Columbia, the *Laffey* rates would be

13    a far more significant part of the evidence. But here, as in most cases where fees are sought for Mr. Levy's

14    work, the Court is asked to consider several pieces of evidence about the market value of his legal work,

15    based in large part on awards in other cases in this District, and on affidavits about the nature of the market

16    for legal services. Plaintiff has presented sufficient evidence to support the hourly rates claimed, and

17

---

18       [4]*Yahoo!, Inc. v. Net Games*, 329 F.Supp.2d 1179, 1183-1184 (N.D. Cal. 2004) (quoting *Blum*

19   *v. Stenson*, including language about non-profit counsel even though plaintiff's counsel were not); *Albion Pacific Prop. Res. v. Seligman*, 329 F. Supp.2d 1163, 1166 (N.D. Cal. 2004); *MGA Entmt.*

20   *v. National Prods. Ltd.*, 2012 WL 182072, at *2 (C.D. Cal. Jan 23, 2012); *Petroleum Sales v. Valero Refining Co.-California*, 2007 WL 2694207, at *3 (N.D. Cal. Sep 11, 2007), *aff'd*, 304 Fed. Appx.

21   615 (9th Cir. 2008). *See also Vargas v. Transeau*, 2008 WL 3164586 (S.D.N.Y. Aug. 6, 2008) (market rate fees in copyright case for counsel from Stanford law school clinic), *aff'd*, 352 Fed.

22   Appx. 458 (2d Cir. 2009).

23       [5]*Animal Blood Bank v. Hale*, 2012 WL 5868004, at *17 (E.D. Cal. Nov. 19, 2012) (using

24   *Laffey* rate, adjusted to Sacramento market, in case of fees pursuant to contract); *Thomasville Furniture Indus. v. Thomas,* 2012 WL 1476070, at *2 (W.D.N.C. Apr. 24, 2012) (using *Laffey* rate

25   for paralegals, adjusted to local market, in trademark case); *Craigslist, Inc. v. Mesiab*, 2010 WL 5300883, at *17 (N.D. Cal. Nov. 15, 2010) (using *Laffey* rate, adjusted to local market, in trademark

26   case); *Craigslist, Inc. v. Naturemarket, Inc.,* 694 F. Supp.2d 1039, 1067-1068 (N.D. Cal. 2010) (using *Laffey* rate, adjusted to local market, in trademark case)*; IO Group, Inc. v. Jordan,* 2010 WL

27   2231793, at *4 (N.D. Cal. June 1, 2010) (using *Laffey* as a benchmark in copyright infringement case). *See also Great Socialist People's Libyan Arab Jamahiriya v. Miski,* 683 F. Supp.2d 1, 14 n.8

28   (D.D.C. 2010) (citing *Laffey* in fixing hourly rate for discovery sanctions in trademark case).

defendant has offered no evidence to contradict the appropriateness of these rates in light of all relevant factors.

Mr. Carreon also claims that fewer hours should have been spent litigating the case, but he does not point to any specific time entries that he contends are inappropriate; nor does he acknowledge the significant billing judgment exercised by plaintiff's counsel, reflected in plaintiff's opening brief on fees, eliminating large numbers of recorded hours and foregoing **any** application for time spent by several lawyers in the case. But Mr. Carreon's insistence on pursuing discovery has significantly increased the number of hours devoted to the litigation, and as shown in plaintiff's opening brief, time spent litigating the fee issue should be included in the fee award.

The total time sought for the work of Mr. Levy and Ms. Gellis since the fee application was filed, reflected in Exhibits FF and GG, is as follows:

| Lawyer | Hours | Hourly Rate | Total Fee |
|--------|-------|-------------|-----------|
| Levy | 43.6 | $700 | $30520 |
| Gellis | 19.9 | $300 | 5970 |
| Total | | | $36490 |

As was true of the original fee motion, these hours reflect the elimination of all time for several lawyers who worked on the case, as well as the exercise of billing judgment to eliminate or reduce the hours sought for work deemed less productive. In addition, plaintiff asks the Court to require defendant to pay the expenses incurred in connection with his deposition, including $645 for travel to the deposition and $515.25 for the deposition transcript. The total fees and expenses sought for this stage of the fee litigation is $37,650.25; when added to $40, 115 sought in the application itself, the total application is for $77,765.25.

**4.      Awarding Fees Will Defend, Not Harm, Statutory and Constitutional Rights**.

Incredibly, Mr. Carreon suggests that if this Court awards fees, trademark and copyright owners will be deterred from making valid claims, and free speech will be deterred. The opposite is true. Failure to award fees will chill speech and encourage bad faith misstatements of intellectual property rights.

Mr. Carreon's blustering threats to plaintiff—through his counsel—are unique. They represent an open, defiant, unabashed boast about Mr. Carreon's ability and willingness to leverage his Bar membership to inflict uncertainty, fear, unnecessary expense, and unjustified inconvenience on someone exercising his

First Amendment rights.  Mr. Carreon's subsequent conduct—evading service, abusing the discovery process to interrogate plaintiff about his political beliefs, and breaching a protective order—demonstrate that he meant exactly what he threatened.  Deterring such conduct will have no impact whatsoever on the good faith claims by responsible and ethical holders of intellectual property.  Nobody could accidentally act the way Mr. Carreon has acted.  Mr. Carreon's behavior has been extreme, and extremely chilling to free speech.  Consequently, in addition to the groundlessness of his trademark claims, his conduct justifies the attorney fee award that plaintiff seeks.

### CONCLUSION

The motion for an award of attorney fees, in the amount of $77,765.25, should be granted.

Respectfully submitted,

_____/s/ Paul Alan Levy_____
Paul Alan Levy (pro hac vice)
Julie Murray

Public Citizen Litigation Group
1600  20th Street NW
Washington, D.C. 20009
(202) 588-1000


_____/s/ Catherine R. Gellis_____
Catherine R. Gellis, California Bar #251927

P.O. Box 2477
Sausalito, California 94966
(202) 642-2849
cathy@cgcounsel.com

March 24, 2013                                   Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that I am causing a copy of this Motion and Memorandum, as well as the accompanying affidavits and exhibits, to be filed by the Court's ECF system, which will serve them on defendant Charles E. Carreon.

_____/s/ Paul Alan Levy_____
Paul Alan Levy