1 | Paul Alan Levy, pro hac vice
Public Citizen Litigation Group
2 | 1600  20th Street, N.W.
Washington, D.C. 20009
3 | (202) 588-1000
plevy@citizen.org
4 |
Catherine R. Gellis, California Bar #251927
5 | P.O. Box 2477
Sausalito, California 94966
6 | (202) 642-2849
cathy@cgcounsel.com
7 |
Attorneys for Plaintiff
8 |
UNITED STATES DISTRICT COURT
9 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

10 | CHRISTOPHER RECOUVREUR,                )   No. 3:12-cv-03435
                                           )
11 |            Plaintiff,                  )   **REPLY AFFIDAVIT OF**
                                           )   **PAUL ALAN LEVY**
12 |       v.                              )
                                           )   Date:
13 | CHARLES CARREON,                       )   Time:
                                           )   Courtroom #3, 17th Floor
14 |            Defendant.                  )
                                           )

15 |

16 |        1. My name is Paul Alan Levy.  I make this affidavit in further support of plaintiff's motion for an

17 | award of attorney fees.

18 |        2. In the three months since plaintiff moved for an award of attorney fees, I recorded an additional

19 | 47.2 hours of time spent on this case; the time records reflect that my colleague Julie Murray spent an

20 | additional 6.9 hours.  A copy of the time records is attached as Exhibit FF (the exhibit lettering is sequential

21 | to previous exhibits submitted by plaintiff in this case, for ease of reference in the briefs).  Allison Zieve,

22 | the director of Public Citizen Litigation Group, also spent many hours preparing the Group's response to

23 | the subpoena that defendant served on it, as well as discussing strategy and reviewing drafts of plaintiff's

24 | papers, although she has not recorded time spent on this case.  Plaintiff's application for fees does not seek

25 | compensation for her time, or for the time of any of my other Litigation Group colleagues who have worked

26 | on the case.

27 |        3. In addition, some of my time, as reflected on our time records (and on the time entries from

28 | Catherine Gellis, which are attached, with my markings, as Exhibit GG), has been excluded from the fee

application in the exercise of billing judgment.  No time is sought for work preparing plaintiff's opposition to defendant's motion for an extension of time to oppose the attorney fee application.

4. Defendant's motion represented that an extension of time was needed to allow him to seek amicus support from the International Trademark Association ("INTA").  I am familiar with INTA's amicus brief procedures from other cases in which I have been involved where its amicus support has been sought.  INTA requires that any request for amicus support show that a copy of the request has been sent to opposing counsel. http://www.inta.org/Advocacy/Pages/AmicusBrief.aspx (Rule 3).  I never received any copy of a request for an amicus brief in this case.

5. Defendant Carreon pursued discovery in this case by mailing me admissions requests, requests for production of documents, and interrogatories, directed to plaintiff, which were due to be answered by March 11, 2013; by serving third-party subpoenas on Public Citizen Litigation Group and Kenneth White, both returnable March 8, 2013; and by taking plaintiff Recouvreur's deposition.  As it happened, on March 8, 2013, the date when Mr. Carreon said he would prefer to take plaintiff's deposition, co-counsel Catherine Gellis was scheduled to be in Washington, D.C.  Rather than both of us flying to California to sit with plaintiff during his deposition on the requested date, plaintiff agreed to fly to Washington.  Because it would save travel by two attorneys, while accommodating Mr. Carreon's requested date, and because no part of the fees would be payable to plaintiff himself, Public Citizen covered plaintiff's travel expenses to Washington.

6. In advance of the deposition, in an effort to minimize disputes, I conferred with defendant about the written discovery requests to plaintiff.  In particular, I asked defendant to explain how each of several written requests was relevant to the attorney fees issues that remain to be decided in the case.  I confirmed Mr. Carreon's relevance explanations in an email to him dated March 5, 2013.  A copy of that email, which accurately summarized his explanations, is attached as Exhibit HH.

7. Excerpts from plaintiff's responses to defendant's requests for production of documents and from the transcript of the deposition of Christopher Recouvreur are attached as Exhibit II.

8. Shortly after the deposition ended, Tara Carreon posted a discussion of the deposition, including information about how Recouvreur answered certain questions, on a discussion site that she and her husband operate.  A copy of that post is attached as Exhibit JJ.

9. Mr. Carreon's opposition to the application for attorney fees included a document that Public Citizen Litigation Group had provided to him pursuant to the subpoena, but subject to a protective order (Document 50) that restricted the circumstances in which the document, or certain information in the document (the amount of my salary), could be filed. On March 6, 2013, Mr. Carreon had agreed to the text of the proposed protective order and authorized me to e-file it with his signature.

10. The document attached as an exhibit to Mr. Carreon's March 18 opposition (Document 54-2) was provided in exactly the form in which Public Citizen Litigation Group sent it to him, with all the dollar amounts redacted except my salary, which was not redacted. Mr. Carreon's brief (Document 54) also included the dollar amount of my salary, and performed a mathematical calculation from which a reader of the brief could calculate back to determine my salary.

11. As reflected on my time records, I spent more than two hours on March 19 trying to get this information taken off the public record, including trying to reach Mr. Carreon to get him to take action to remove the filings from the court's ECF records, and contacting personnel at the Court to ask to have the information locked pending further action from Mr. Carreon. After I was able to get the documents locked, Mr. Carreon communicated to the Court his acknowledgment that the protective order had been violated, and asked that his filings be withdrawn. He then filed replacements. Emails to the Court and to Mr. Carreon in pursuit of that objective are attached as Exhibit KK. In addition, because I anticipated that the documents would quickly find their way into the RECAP public archive of ECF documents, I communicated with personnel connected with RECAP to get the documents removed from that location as well. Once I was assured that steps would be taken to remove the documents from public access there, I contacted online writers whom I know to be following the case closely to ask them to exercise discretion not to publish the documents or their contents. These writers have respected the protective order.

12. Again on March 20, after I learned that RECAP's removal of the documents from public access was incomplete, it took me additional time to intercede with RECAP leadership to get the documents fully removed from public access. RECAP cooperated in the process late in the evening of March 20, taking the documents offline, and it indicated that it is reviewing its procedures to make sure that future removals of sensitive documents are fully effective.

13. So far as I am aware, the documents in question have not been published beyond the temporary

posting on ECF and on the RECAP archive.

14. Mr. Carreon's opposition contains one sentence asserting that co-counsel in this case contributed nothing of value. I disagree with that judgment. Ms. Murray, Ms. Gellis and I worked on this case as a team, along with Kenneth White, who chose at the outset not to be listed on the papers, and Ms. Gellis appears as counsel of record. Each of my co-counsel participated in strategy discussions and provided detailed comments on briefs and other filings and even on significant communications before they were sent. Where, in my judgment, particular time entries reflected work that did not contribute as much to the result, I have exercised billing judgment by eliminating or reducing the amount of time included in the application. In addition, we have chosen not to seek any award for time spent by any co-counsel besides Ms. Gellis.

I hereby certify under penalty of perjury that the foregoing is true and correct. Executed on March 23, 2013.

Paul Alan Levy

Levy Affidavit

## PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW • Washington DC 20009
202/588-1000 • www.citizen.org

## Time Records Report

| Staff | Date | Time | Description |
|-------|------|------|-------------|

### Carreon v. Doe

**Levy, Paul**

| | Date | Time | Description |
|---|------|------|-------------|
| | 1/11/2013 | 0.3 | TC CC re ext; confer counsel |
| | 1/15/2013 | 0.9 | Rvw Carreon filing, discuss co-counsel; resch |
| | 1/16/2013 | 2.1 | Resch, draft opposition to extension; confer JM, edit opp |
| | 1/17/2013 | 0.6 | Rvw CG/AZ edits and proofreading comments, revise mem |
| | 2/11/2013 | 1.9 | Review discovery requests; discuss co-counsel; interview client; draft, edit responses to admissions |
| | 2/12/2013 | 0.8 | Edit responses, resch, discuss co-counsel |
| | 2/14/2013 | 2.2 | Resch priv issues, discuss coun and cli, draft reponses to Rule 34 and Rule 33 requests |
| | 2/19/2013 | 1.2 | Edit discovery response drafts reviewing comments from co-counsel |
| | 2/25/2013 | 0.2 | Confer co-coun /cli re email to CC on location of CR rep |
| | 2/25/2013 | 2.3 | Rvw doc request to PCLG, rvw docs, discuss AZ |
| | 2/26/2013 | 0.3 | TC's/resch re date and location of CR depo |
| | 2/26/2013 | 0.7 | Rvw doc's for PCLG subpoena |
| | 2/26/2013 | 1.6 | Edit responses to written discovery |
| | 2/28/2013 | 2.5 | Review documents for PCLG subpoena |
| | 3/1/2013 | 1.5 | Rvw written discov re CR, discov conf w/CC, confer co-coun |
| | 3/1/2013 | 1.2 | Review documents for PCLG subpoena, discuss AMZ |
| | 3/5/2013 | 1.7 | Email to Carreon followup discovery conf; rvw doc's for PCLG production, discuss AZ |
| | 3/6/2013 | 0.1 | Confer CC/coun/cli re dep |
| | 3/8/2013 | 4.1 | Prepare for CR dep, do dep, debrief afterward; echeck exhibits and email about Exh 4 |
| | 3/8/2013 | 0.7 | Finalize written discovery |
| | 3/12/2013 | 0.6 | Talk Carreon re Exh 4, resch inadvert disclo |
| | 3/13/2013 | 0.2 | Discuss discov issues w/cocoun |
| | 3/19/2013 | 2.1 | Discuss protective order violation w/co-counsel, try Carreon, contact clerk's office and judge's chambers; discuss CC; avoid further publication |
| | 3/19/2013 | 2.5 | Resch fee reply, address Exh 4 issue; draft reply brief |
| | 3/19/2013 | 0.2 | Negot dep-related issues, discuss co-coun |
| | 3/20/2013 | 6.9 | Resch, draft reply brief |

*Not sought* (handwritten annotation)

**Levy Affidavit
Exhibit FF**

| | | | |
|---|---|---|---|
| | 3/20/2013 | 0.4 | Further work to take protective order violations off Internet Archive |
| | 3/20/2013 | 0.3 | rvw offer, respond |
| | 3/21/2013 | 1.2 | Draft fee affidavit |
| | 3/21/2013 | 4.3 | Edit brief and affidavit, resch, discuss co-counsel |
| | 3/22/2013 | 1.6 | Discuss reply and aff w/JM, edit; review proofreads, final citecheck and edit |
| | **Staff total:** | **47.2** | |
| Murray, Julie | | | |
| | 1/15/2013 | 0.3 | Reviewed Carreon motion for an extension of time and accompanying declaration. |
| | 1/16/2013 | 0.5 | Reviewed and made comments re: draft opposition to Carreon motion for an extension of time. |
| | 1/17/2013 | 0.1 | Reviewed and made comments on draft affidavit of Paul Levy to accompany opposition to Carreon's motion for an extension of time. |
| | 2/11/2013 | 0.2 | Reviewed Carreon's discovery requests. |
| | 2/12/2013 | 0.2 | Reviewed and made suggestions to Recouvreur responses to request for admissions. |
| | 2/14/2013 | 1.3 | Reviewed case law on privilege w/r/t discovery request. |
| | 2/25/2013 | 2.9 | Reviewed emails and other documents for response to Carreon subpoena to PCLG; created a basic log for AZ. |
| | 3/22/2013 | 0.4 | Reviewed Carreon opposition to motion for attorney's fees. |
| | 3/22/2013 | 1 | Reviewed and commented on draft reply to Carreon opp to motion for attorney fees and draft Levy affidavit in support of reply. |
| | **Staff total:** | **6.9** | |
| | **Case total:** | **54.1** | |
| | **Grand total** | **54.1** | |

# PUBLIC CITIZEN LITIGATION GROUP

1600 20th Street NW • Washington DC 20009
202/588-1000 • www.citizen.org

## Expense Report

| Staff | Date | Expense | Description |
|---|---|---|---|
| **Carreon v. Doe** | | | |
| Levy, Paul | | | |
| | 3/14/2013 | $645.60 | Recouvreur Travel to Deposition |
| | 3/21/2013 | $515.25 | Deposition transcript |
| | Staff total: | ,160.85 | |
| | Case total: | ,160.85 | |
| | Grand total | ,160.85 | |

Page 1 of 1

GELLIS TIME 2013

1/4/13 - Discuss Register.com matter with P. Levy - .1
1/10/13 - Review email from C. Carreon re: proposed stip - .1
1/11/13 - Review email from C. Carreon re: proposed stip - .1
1/15/13 - Review C. Carreon's ex parte motion for an extension; draft opposition - .8 *) not sought*
1/16/13 - Review opposition to motion for extension - 1.0
1/17/13 - Review opposition to motion for extension - 1.0
1/22/13 - Review order for extension - .2

2/6/13 - Discuss discovery response with P. Levy - .3
2/11/13 - Discuss discovery response - 1.0
2/12/13 - Discuss discovery response; research - 2.5
2/13/13 - Research discovery response - 3.0
2/14/13 - Discuss discovery response - 1.0
2/19/13 - Discuss discovery response - .4
2/20/13 - Review discovery response - .1
2/22/13 - Review subpoenas - .2
2/25/13 - Discuss Recouvreur deposition - .1
2/26/13 - Discuss Recouvreur deposition - .1
2/27/13 - Discuss Recouvreur deposition - .1

3/1/13 - Discuss discovery response - .5
3/6/13 - Discuss deposition - .2
3/7/13 - Prepare client for deposition - 1.0
3/8/13 - Prepare to defend client deposition - .5
3/8/13 - Defend client deposition - 2.5
3/8/13 - Edit discovery - 2.5 *7*
3/9/13 - Review deposition record - 2
3/12/13 - Discuss deposition with counsel - 1
3/13/13 - Discuss deposition with counsel - .2
3/19/13 - Review opposition to motion for fees; discuss protective order violation - 1.3
3/20/13 - Discuss opposition to motion for fees, Exhibit 4 - .2
3/21/13 - Edit reply to opposition to motion for fees - 3.0 *1.0*
3/21/13 - Edit affidavits for P. Levy and myself - .5

*19.9*

**Levy Affidavit**
**Exhibit GG**

## Paul Alan Levy

| | |
|---|---|
| **From:** | Paul Alan Levy |
| **Sent:** | Tuesday, March 05, 2013 8:36 PM |
| **To:** | Charles Carreon, Esq. (chascarreon@gmail.com) |
| **Subject:** | Confirmation of Discovery Conference Last Friday |
| **Attachments:** | Stipulated Protective Order.pdf |

Charles:

      As you suggested I do, I am writing to confirm your agreement that by in return for our furnishing certain redacted documents that are arguably protected by the attorney client privilege and/or work product protection, you agree not to contend that the production waives the privilege or protection for other parts of those documents, or indeed for other documents or information. This applies both to plaintiff's response to your discovery requests and to the same documents as described by your subpoena to Public Citizen Litigation Group.   Please confirm that you agree to this, even with respect to parts or information in the same subject area.

      In addition, I attach a proposed stipulation for a protective order for the response to the subpoena duces tecum to Public Citizen Litigation Group insofar as it described documents that would reveal the dollar amount of my salary.   You can either e-file it yourself, or confirm for me that I am authorized to e-file it with your e-signature.

      I am writing to confirm the relevance arguments that you advanced in support of certain discovery requests when we conferred about them last Friday.  Finally, I address the requests in order.

### REQUESTS FOR ADMISSION

Admission 1
You told me that there is an opinion from Judge Seeborg, when he was a magistrate judge, reciting the factors governing the amount of fees to be awarded (I take it you were referring to the so-called *Kerr* factors), holding that the actual value achieved for plaintiff is one of the factors. You were not able to identify the case, but you argued that, if Recouvreur is just a regular guy, not a journalist, that would show that protecting his right to have a gripe site had little value, because having the gripe site does not affect his livelihood.

Admission 2
You advanced the same basic theory as for Admission 1.  You said that you hoped to show that neither your threatened lawsuit, nor the declaratory judgment about the threatened claims, had any impact on Recouvreur's ability to practice his profession.

Admission 3
You said this request is relevant because the legislative history of the Lanham Act shows that the only reason Congress provided for attorney fees as a remedy was to enable markholders to protect themselves.  Therefore, you said, if Recouvreur owns no marks, he cannot get fees under the Lanham Act.

Admission 6

You said that this request is relevant to a possible claim that you might have brought claiming misappropriation of likeness; you agreed that this amounts to a right-of-publicity type claim. Even though you did not threaten to sue over the right of publicity, you said that had you been thinking more clearly you would have threatened such a claim, and that you would certainly have done so once you came to recognize, as you admit you did, that the *Bosley* case protects Recouvreur against any trademark claim based on a fair use defense. You contend that the possibility that you could have brought a right of publicity claim makes facts pertaining to the viability of such a claim relevant to fees.

Admission 7
Your relevance claim is the same as for Admission Request 6.

Admission 8
Your relevance theory is similar to the theory for Requests 6 and 7, but now the possible claim that you did not identify in your threats of litigation is for copyright infringement.

Admission 13
You contend that the precise amount of money raised is relevant to your contention that the parody site at issue in this case is commercial because the site linked to the Oatmeal web site which, in turn, is a commercial web site

Admission 16
You claim that this request is relevant based on the argument that the lawsuit did not secure enough value for Recouvreur.

Admission 24
Your relevance theory is the same as for Requests 1, 2 and 16.

**INTERROGATORIES**

We did not discuss the relevance theories with respect to the interrogatories, but it is apparent that they would be the same as for the admission request to which each interrogatory refers.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

Similarly, the first 25 document requests would have the same relevance (or not) as the admission requests through request 25

Document requests 21 and 22 seek information that is reflected in the representation agreements between Recouvreur and Ms. Gellis and myself. I pointed out that, particularly because you are asserting that state-law claims are relevant to the fee application, there are significant issues of attorney-client privilege and/or work product protection. As discussed above, you agreed that if we produce the portion of the documents that disclose financial arrangements, while redacting other parts, you will not contend that the production waives the privilege or protection for other parts of those documents, or indeed for other documents or information.

Request 27(a)
At first, you said that any documentation of telephone calls between Recouvreur's phone number and me was relevant because it matters whether I called Recouvreur first or whether Recouvreur called me first. But when I suggested that, in that case, all you need is the record of the first call, you responded that you need

documentation of all the calls, because that is relevant to your theory that I was conducting the litigation without any input from Recouvreur. You believe that if you can can show that there were too few telephone calls, this would help show that any fee award is improper.

Request 27(b)
You propounded the same theory about the documentation of calls between Recouvreur's phone number and Ms. Gellis.

Request 27(c)
Even after I told you that Kenneth White was a member of Recouvreur's legal team, you said documentation of the telephone calls with him is relevant because it would allows you to argue that it is suspicious that no fees are being sought for White's time, and that fees are sought only for Public Citizen Litigation Group. You offered the same relevance ground for Request 28(c).

Request 28(a)
You claimed that this request is relevant because you were able to identify Recouvreur soon after you demanded his identifying information from Register.com, thus vitiating one of the reasons why Public Citizen decided to take this case. Responsive documents, you contend, would showing that Recouvreur did not receive enough value from the litigation to warrant any fees at all, or a fully compensatory fee award.

Request 28(e)
After I told you the only communications were about the making of small donations, you said that you would limit the request to donations to BearLove. The claimed relevance is that if Recouvreur is invested in the success of the BearLove campaign, it supports the argument that Recouvreur's site is commercial. I offered that, if you would tell me the amount you felt you needed to be able to make that argument, I would tell you whether the amount was lower than that. You were unwilling to accept that proposed compromise.

Request 28(g)
You argued that this request is relevant to show Recouvreur's possible motivations for setting up the web site; for example, you speculated that Recouvreur and Felton could have talked about how much money they could extort from Carreon. You argued that these communications would also show the benefits, or lack of benefit, that Recouvreur derived from winning the declaratory judgment, thus supporting the same argument as propounded to support such Admission Requests as No.1 and No. 2.

Request 29
Your claimed relevance for this request is the same as for Request 28(g): that it would show plaintiff's motivations and benefits. You contended that it would have been better if plaintiff had not spent his time talking about you, but instead devoted himself to trying to "improving his station in life," that is, improving "his pecuniary position."

If you have any additional relevance arguments that we should consider in deciding how to respond to your discovery requests, please let me know.

Paul Alan Levy
Public Citizen Litigation Group

```
 1                UNITED STATES DISTRICT COURT

 2                NORTHERN DISTRICT OF FLORIDA

 3

 4                  Case No. 3:12 CV 03435 RS

 5

 6      - - - - - - - - - - - - - - x

 7   Christopher Recouvreur,        :

 8                    Plaintiff,            :

 9   vs.                            :

10   Charles Carreon,               :

11             Defendant.           :

12                                  :

13   - - - - - - - - - - - - - - x

14

15              WEBEX DEPOSITION OF

16              CHRISTOPHER RECOUVREUR

17                Washington, D.C.

18              Friday, March 8, 2013

19                   1:00 p.m.

20

21

22

23

24

25
```

Levy Affidavit
Exhibit II

```
 1              But if you're instructed not to

 2     answer, then wait for your counsel to make

 3     his objection and then we will proceed on to

 4     the next question.

 5              I assume that if your counsel

 6     instructs you not to answer that you will

 7     follow his instructions, correct?

 8       A    Yes.

 9       Q    If your counsel instructs you not

10     to answer, then I will not follow up with a

11     question.  We will agree that you would have

12     followed with instructions and I do not have

13     to say are you going to follow his

14     instruction, correct?

15       A    Pardon me, I could not hear that

16     last part.

17       Q    I said we will agree that you will

18     follow his instructions and I don't have to

19     ask that follow up question.  You are going

20     to follow your counsel's instructions,

21     correct?

22       A    Correct.

23       Q    Where do you live?

24              MR. LEVY:  Could you explain to me,

25       Mr. Carreon, why that question is
```

```
 1        relevant to the attorney fee issue that

 2        is to be decided in this case?

 3             MR. CARREON:  I think any time a

 4        witness is deposed you always get to ask

 5        your background information, where they

 6        live, what are they doing, where they

 7        are coming from, where do they work,

 8        those kinds of things.  I don't think I

 9        have to give a relevancy argument.

10             MR. LEVY:  Is there any other

11        relevance to the issues in the case?

12             MR. CARREON:  I don't really want

13        to have a discussion about it.

14             MR. LEVY:  I will allow the witness

15        to identify the state in which he lives

16        and which half of the state he lives in

17        and we can go from there.

18   BY MR. CARREON:

19        Q    You live in Yolo now, is that

20   correct?

21        A    I live in Northern California.

22        Q    You live in Yolo?

23             MR. LEVY:  What is the relevance of

24        the location of Mr. Recouvreur's

25        residence to the issues remaining?
```

```
 1        MR. CARREON:  Are you instructing
 2   him not to answer?
 3        MR. LEVY:  If you're speaking we
 4   cannot hear you.
 5        MR. CARREON:  I asked you a
 6   question.
 7        MR. LEVY:  I did not hear the
 8   question.
 9        MR. CARREON:  Are you instructing
10   him not to answer?
11        MR. LEVY:  Mr. Carreon, I am going
12   to say a little bit and I will save the
13   full version of what I am about to say
14   in the future.
15        Discovery in this case did not open
16   before you offered judgment in this
17   case.  You have never made initial
18   disclosures as the rules require it
19   before you can take discovery.
20        Now I think it is fair to infer
21   from Judge Seeborg's order granting you
22   time to respond to our motion.
23        A fair reading is that he
24   contemplated allowing some discovery,
25   but he did not address whether you were
```

```
 1    excused from the requirement of initial

 2    disclosures before beginning discovery

 3    and he was quite clear that any

 4    discovery allowed would be limited in

 5    scope.

 6          You have not explained how this

 7    question has any relevance to the only

 8    remaining issue in this case.

 9          The applications for awards of

10    attorney fees, and although relevance is

11    normally not a basis for objecting at a

12    deposition when there is a limited scope

13    that objection is proper especially

14    where at best you are outside or in the

15    shadow grounds of relevance, and there

16    is also a privacy concern here.

17          You have already written to

18    plaintiff's former employer at the time

19    of suit implicitly threatening to bring

20    it into the case.

21          You have a blog entitled Rape

22    Mutation where you attack plaintiff.

23    There are attacks on your perceived

24    enemies on your Nader Library Blog, on

25    the American Buddha Blog, some of it in
```

```
 1        exceptionally foul language.
 2            You are not going to use the power
 3        of the court to demand information that
 4        could expose plaintiff's neighbors, and
 5        classmates, former employers, and
 6        plaintiff himself to more of such
 7        conduct.
 8            I object based on relevance and the
 9        scope of permissible discovery unless
10        you can give me a relevance explanation,
11        and Mr. Recouvreur, I instruct you not
12        to answer the question.
13                       (Ex 1
14   BY MR. CARREON:
15        Q    Do you see Exhibit Number 1 there?
16            THE REPORTER:  There are no
17        documents before the witness.
18            MR. CARREON:  I will just use the
19        Presenter to introduce Exhibit Number 1.
20            THE REPORTER:  I guess Cathy is
21        going to have to show her computer to
22        counsel so he can see the document that
23        you are referring to?
24            MR. LEVY:  I do not see it.
25            MS. GELLIS:  Minimize this and
```

```
 1    BY MR. CARREON:

 2        Q    So having marked this document as

 3    Exhibit 1, Mr. Recouvreur, you have already

 4    told me that this is a blog page you created.

 5    Is that a photograph of you on the right hand

 6    side there?

 7        A    It is.

 8        Q    That says, "Internet Coyote Eating

 9    Digital Strays."  Do you identify yourself as

10    the Internet Coyote on this blog?

11            MR. LEVY:  What is the relevance of

12        this question to the attorney fee

13        application that is the only issue

14        remaining in the case?

15            MR. CARREON:  As you know from a

16        prior meet and confer and I do not want

17        to expend at the cost of approximately

18        $5.00 per page an extensive meet and

19        confer at this time.

20            If you're going to interpose one

21        relevancy objection after another, then

22        I am going to suspend the deposition and

23        I will seek to clarify this claim that

24        you have.

25            You have not made any motion for
```

Christopher Recouvreur vs. Charles Carreon
Christopher Recouvreur on 03/08/2013

Page 15

```
 1   protective order in any way to restrict

 2   the deposition.

 3        I will seek to clarify the whole

 4   thing and we will just have this

 5   deposition at another time when we can

 6   avoid having costly disputes transcribed

 7   on the record.

 8        MR. LEVY:  Mr. Carreon,

 9   Mr. Recouvreur came here at great

10   expense to sit for a deposition.

11        I have asked you the simple

12   question of what the relevance of this

13   is to the --

14        MR. CARREON:  I would --

15        MR. LEVY:  Excuse me, Mr. Carreon.

16   I will finish and then you will speak.

17   You spoke before about not interrupting.

18        I will keep in brief.

19        Mr. Recouvreur is here to answer

20   questions that are within a reasonable

21   scope of relevance.  If you would like

22   to confer off the transcript about the

23   relevance I am glad to do that.

24        MR. CARREON:  That's fine.

25        MR. LEVY:  Would you like to do
```

```
 1        that now?
 2             MR. CARREON:  Let's go ahead.  Yes,
 3        I think we should, Paul, because I mean
 4        we can dialogue.  We had a nice dialogue
 5        over the phone, we always do it, it's
 6        just really expensive having Mr. Hubbard
 7        transcribe this kind of a discussion.
 8        So can we just go ahead and go off the
 9        record and continue talking?
10             THE REPORTER:  I don't like it
11        myself, but go right ahead, fellas.
12             MR. LEVY:  We are off the record.
13                       (Whereupon, counsel had
14                        an off record discussion.
15                        It was then agreed off
16                        the record to take a five
17                        minute recess and then
18                        resume.)
19                       (On resuming after a
20                        five-minute recess.)
21             MR. CARREON:  Back on the record.
22        BY MR. CARREON:
23             Q    Mr. Recouvreur, why did you sue
24        Charles Carreon?
25             A    I sued in order to protect my
```

Christopher Recouvreur vs. Charles Carreon
Christopher Recouvreur on 03/08/2013

```
 1        A     No, I am not.

 2        Q     You are not a professional web

 3   developer?

 4        A     No, I am not.

 5        Q     You don't make any money over the

 6   Internet?

 7        A     No, I do not.

 8        Q     When you started the

 9   Charles-Carreon.com website, there was a

10   photograph that you used of Charles Carreon,

11   correct?

12        A     Correct.

13        Q     Did you think you needed any

14   permission from Charles Carreon to use his

15   name?  His picture?

16        A     Can you clarify?  It's kind of like

17   two separate questions there.

18        Q     And you're right.  Did you think

19   you needed permission to use Charles

20   Carreon's picture on the website?

21        A     No, I hadn't thought that.  I had

22   found the picture online.

23        Q     You were a donor to the BearLove

24   Campaign, correct?

25        A     Correct.
```

1     It was above $200, I believe.

2          Q    If I told you that it was $350 and

3     I asked you would you have spent that amount

4     in order to file the lawsuit, what would your

5     answer be?

6               MR. LEVY:  Go ahead answer it.

7               THE WITNESS:  I don't know.  I

8          didn't have to deal with that when it

9          was happening and when I was feeling

10         very passionate about it, so I cannot

11         answer that question now.

12    BY MR. CARREON:

13         Q    When were you feeling very

14    passionate about it?

15         A    When I initially created the

16    website and when I received the letter that

17    you had sent to Register.com, I felt very

18    passionate about my rights to continue to do

19    what I was doing.

20         Q    So does this discussion refresh

21    your recollection in any way as to who called

22    who when you first spoke to Mr. Levy?

23         A    No, I just remembered talking to

24    Mr. Levy, but I don't remember who called

25    who.

Christopher Recouvreur vs. Charles Carreon
Christopher Recouvreur on 03/08/2013

Page 40

1      Q      Did you want to file a lawsuit

2   before you spoke to Mr. Levy?

3      A      I wanted to protect my rights to

4   continue to talk about you, yes.

5      Q      So you wanted to file a lawsuit?

6      A      No, I wanted to protect my rights.

7   At first I was thinking I might have to

8   defend them through action of your own, but I

9   wanted to make sure that I was able to do

10   what I was doing.

11      Q      Have you suffered any negative

12   consequences due to having your identify as

13   the operator of the website revealed by

14   Register.com?

15      A      I lost my right to communicate

16   online anonymously.  I also was contacted by

17   reporters about the incident which at the

18   time came out of nowhere and did cause me a

19   due amount of stress, yes, and I went into an

20   agreement with them when I signed up for the

21   website that I had privacy, so yes, I was

22   definitely stressed out by the fact that they

23   had gone back on that and that I had lost

24   something that I had paid for in this sense.

25      Q      How much did you pay for that?

```
 1        A     I don't remember.  It was more

 2   expensive than the actual hosting fee which

 3   was crazy.

 4        Q     The privacy cost you some money?

 5        A     It did.

 6        Q     $5.00, $10.00?

 7        A     I don't remember.

 8        Q     But you have the documents?

 9        A     Yes, I have the account that I can

10   go in and see how much they charged me, I am

11   sure.

12        Q     Can you come back and complete your

13   answer then after you get the transcript to

14   the deposition so we will know how much you

15   paid for the privacy that you didn't get?

16           MR. LEVY:  We understand that you

17        made that request on the record.  You

18        will be getting a response to your

19        written discovery questions which as I

20        recall includes something on this

21        subject as well.

22           MR. CARREON:  If you are telling

23        me, Paul, that I will get the document,

24        that I will get the receipt, then that

25        will be fine, and no need to amend the
```

1    deposition as long as I get that

2    document.

3         MR. LEVY:  I didn't say you would

4    get the document.  I said you will get a

5    response.

6         MR. CARREON:  Then that will be

7    complete fluff if I do not get the

8    response.  I need the answer.

9         I need to know how much he paid.

10   So either give me the paper or give me

11   the answer in the deposition is what I

12   would request respectfully.

13        MR. LEVY:  Mr. Carreon, you can ask

14   what he recalls and he can give you an

15   answer based on what he recalls.

16        Obviously a response to written

17   discovery questions requires greater

18   inquiry and we will respond

19   appropriately.

20        I might add that we think it is

21   completely irrelevant to the attorney

22   fee application that is pending, but in

23   any event, you will receive a response

24   to the written discovery questions you

25   posed by the date that they were due

1        which is Monday.

2            If you would like to repeat your

3        question about what he remembers you may

4        do so.

5    BY MR. CARREON:

6        Q    You got the calls from the

7    reporters.  Which reporters?

8            MR. LEVY:  Why is this relevant,

9        Mr. Carreon?

10           MR. CARREON:  Because he said that

11       it was emotional distress that

12       apparently he was litigating to protect

13       himself from.  I think that is pretty

14       clear.

15           MR. LEVY:  Why is it relevant to

16       the attorney fee application over your

17       claims for trademark infringement?

18           MR. CARREON:  I never made a claim.

19       You are claiming that I made a claim for

20       trademark infringement, so you just stop

21       arguing your case there.

22           What I'm saying is that this is the

23       purported benefit that you brought him.

24       Purportedly you helped him here.

25           You said it in your affidavit that

```
 1        you were trying him out on the anonymous

 2        speech issue.  I am trying to find out

 3        how much stress it caused him from not

 4        being anonymous.

 5             MR. LEVY:  I believe you have

 6        misunderstood what was said in the

 7        affidavit and the reason why it was

 8        said, however I will allow him to answer

 9        the question if he can.

10   BY MR. CARREON:

11        Q    So who did you talk to amongst

12   these reporters?

13        A    I am not going to do his name

14   justice.  Saruze Farbar?  From OrisTechnica.

15        Q    And anyone else?

16        A    That was it.

17        Q    Mr. Farbar's treatment of you in

18   OrisTechnica was favorable, correct?

19        A    I thought it was fair.

20        Q    His speech?  His call to you.  I

21   spoke to him too.  He is very polite,

22   correct?

23        A    He was polite.  He was very polite.

24        Q    So your stress quickly abated after

25   speaking with him, after your talking with
```

Christopher Recouvreur vs. Charles Carreon
Christopher Recouvreur on 03/08/2013

Page 45

```
 1   him the stress went down, correct?

 2        A    No, because I was caught off guard

 3   and actually in a second follow up

 4   conversation with him I was more comfortable

 5   because I knew it was coming.

 6             I had to hang up with him the first

 7   time because I was stressed out.  After that,

 8   I was still continually stressed out that my

 9   public didn't learn of my information about

10   my address and my phone number where publicly

11   available through Register.com which later

12   rescinded that, but I was afraid that other

13   reporters were going to call, or that someone

14   might even show up at my house.  I had a lot

15   of stress anxiety about the whole situation.

16        Q    Right, but you had no compunctions

17   about subjecting Charles Carreon to stress of

18   making him an object of public derision by

19   way of Charles-Carreon.com, correct?

20        A    I had no problems making your name

21   which is already publicly available now.

22        Q    That is not my question.  I said

23   that you had no compunction about deriding

24   Charles Carreon publicly and you did not

25   worry about what stress it might cause him,
```

1   did you?

2       A    I think those two issues are

3   unrelated, but I had no problems with

4   speaking what I thought needed to be said

5   about you, no.

6       Q    So you feel that Charles Carreon's

7   stress is something that he should suffer,

8   but you should be able to speak anonymously

9   about him and suffer no stress as a

10  consequence thereof, is that correct?

11          That is what you are trying to

12  protect by this lawsuit, right?

13      A    No.

14          MR. LEVY:  Mr. Carreon, I am going

15      to interrupt this line of inquiry at

16      least to state this.

17          MR. CARREON:  Wait a minute.  Don't

18      worry about it.  You can end your

19      interruption now.  You can end your

20      interruption.

21  BY MR. CARREON:

22      Q    You filed this lawsuit anonymously

23  correct?

24      A    I did.

25      Q    Why?

1       A      To protect my right to speak

2    anonymously.

3       Q      But the court required you to amend

4    it to state your name.  Did you think that

5    that was unfair?

6       A      Since my name had been divulged by

7    Register.com, I thought it was logical.

8       Q      Your name had already been divulged

9    by Register.com when you filed the lawsuit,

10   correct?

11            MR. LEVY:  Mr. Carreon, now I am

12        going to state why I began to speak.

13            MR. CARREON:  You do not have to.

14            MR. LEVY:  Mr. Carreon, now I am

15        going to speak.  I did not interrupt

16        you.  Now you are going to allow me to

17        speak.

18            MR. CARREON:  Go ahead.

19            MR. LEVY:  The complaint did not

20        seek any relief against you for

21        divulging or causing Mr. Recouvreur's

22        name to be divulged.

23            No damages were sought for

24        emotional distress.  Nothing was sought

25        against you for that, and therefore, I

Christopher Recouvreur vs. Charles Carreon
Christopher Recouvreur on 03/08/2013

Page 48

```
 1          fail to see the relevance, although it

 2          may excite you very much to know that

 3          you are able to force Mr. Recouvreur's

 4          name into the public domain by making a

 5          baseless threat of trademark litigation

 6          against him and against Register.com.

 7              That may please you a great deal

 8          but that was not any part of the claim

 9          in this lawsuit.

10              It may well be a part of a claim in

11          a future lawsuit against Register.com

12          something that we have communicated with

13          Register.com about.

14              We have not brought such a claim

15          against you.  The loss of anonymity was

16          not part of this case.

17              I really don't see, maybe you can

18          explain it to me, but please explain why

19          this line of questioning is relevant to

20          the claim for attorney fees.

21   BY MR. CARREON:

22        Q    Did Ken White contact you about a

23   subpoena that he received?

24        A    Pardon me?

25        Q    Did Ken White contact you about a
```

```
 1   subpoena he received?

 2        A    No.

 3             MR. LEVY:  Wait.  Wait.  Wait.

 4        You're asking about whether one of

 5        Mr. Recouvreur's lawyers communicated?

 6             MR. CARREON:  Stop.  It is

 7        answered.  Done.

 8   BY MR. LEVY:

 9        Q    Has Mr. White ever called you on

10   the phone?

11        A    I have talked to Mr. White on the

12   phone.  Again, I don't remember if he called

13   me or I called him.

14        Q    Did you consider Mr. White or

15   Mr. Levy to be your primary lawyer in this

16   matter?

17        A    I signed a contract with Mr. Levy

18   so I considered him.

19        Q    Did you consult with Mr. White to

20   give you an additional opinion, and again,

21   don't tell me what the opinion might have

22   been, did you consult with Mr. White to give

23   you an additional opinion about whether to

24   file the lawsuit?

25             MR. LEVY:  I really think, Charles,
```

Christopher Recouvreur vs. Charles Carreon
Christopher Recouvreur on 03/08/2013

Page 51

```
 1       Q    Did you exchange 200 emails with
 2  Mr. Ken White?
 3       A    I don't know the exact amount of
 4  emails I exchanged with any of my legal
 5  representation, but there were a lot.
 6       Q    To say that there were 200 emails
 7  with Ken White, that would not surprise you?
 8       A    I don't want to go saying a number
 9  that I don't know.  I don't want to lie.  I
10  am under oath.  They were a lot.  I just
11  don't know how many.
12       Q    I am entitled to your best
13  estimate.  Do you think that there were
14  anywhere near or were there more than 100
15  emails do you think with Mr. White?
16       A    Yes.
17       Q    So 200.  There could have been 200
18  emails?
19       A    I don't know, but there could have
20  been.
21       Q    Then that is your answer.  Did you
22  consider Mr. White's advice valuable?
23       A    I respect Mr. White's opinion, yes.
24       Q    Do you know why Mr. White is not
25  submitting any application for attorney's
```

```
 1    telephone number?

 2              MR. LEVY:  It seems to me that the

 3         record is clear that Mr. Recouvreur

 4         sought Mr. White's legal advice and now

 5         you are asking about whether a

 6         particular thing was said by Mr. White

 7         in the course of providing legal advice

 8         or legal assistance and it seems to me

 9         that we are right in the middle of a

10         work product privilege.

11              I hope you will not pursue the

12         question.  I will do what I have to do

13         if you do.

14              MR. CARREON:  Yes, that's fine.  I

15         will withdraw that question.

16    BY MR. CARREON:

17         Q    The things that are present that

18    are stated in this Exhibit 5 email from

19    Mr. Levy, did you discuss these things with

20    Mr. Levy before he sent this email?

21              MR. LEVY:  Again, it seems to me

22         that you're asking that Mr. Recouvreur

23         to describe the substance of his

24         conversations with his counsel and it is

25         not appropriate.  Do I need to give an
```

Christopher Recouvreur vs. Charles Carreon
Christopher Recouvreur on 03/08/2013

Page 60

1        instruction on this?  I will.

2             MR. CARREON:  Yes.

3             MR. LEVY:  Then, Mr. Recouvreur, I

4        instruct you not to answer the question.

5             First of all, it has no relevance

6        to the fee application.  I understand

7        what Mr. Carreon's theory is.  I think

8        it is not correct, and wholly apart from

9        the relevance, it plainly asks for

10       information about the contents of

11       communications between counsel and

12       client and I am instructing you,

13       Mr. Recouvreur, not to answer the

14       question because it is an attempt to

15       probe both attorney-client privilege and

16       work product protection.

17            MR. CARREON:  Right.  So let me ask

18       you this.

19   BY MR. CARREON:

20       Q    Aside from looking at your phone

21   bill, would you agree that there is no way of

22   discovering who made the telephone call to

23   whom on Friday, June 22, 2012, you or

24   Mr. Levy?

25       A    I don't think there would be a way

```
 1        pronounced "Lee-Vee".

 2             MR. CARREON:  Yes, okay, fine.

 3        However.  Respectfully, we are right

 4        here at the end, so let's just wrap it

 5        up.

 6             The first thing is this exhibit

 7        here I am going to show you is going to

 8        be marked as Exhibit Number 6.

 9                         (Whereupon, Exhibit

10                          Number 6 is presented via

11                          WebEx viewer to the

12                          witness.)

13             MR. CARREON:  I will show that to

14        you.

15   BY MR. CARREON:

16        Q    Mr. Recouvreur, do you recognize

17   that as your Twitter page?

18        A    I do.

19        Q    You identify yourself there as a

20   Libertarian, correct?

21        A    I do.

22        Q    Did your Libertarian beliefs have

23   anything to do with your decision to create

24   the website?

25             MR. LEVY:  Mr. Carreon, would you
```

1    care to state the relevance of the

2    inquiry into Mr. Recouvreur's political

3    views to the application for an award of

4    attorney fees that is pending?

5         MR. CARREON:  You are contending

6    that you protected his rights to

7    exercise the first amendment.

8         He has said that it was his first

9    amendment rights that he sought to

10   protect.

11        I would think that his political

12   expression under the first amendment

13   would be relevant and whether he has

14   obtained any benefit politically because

15   we have gone through other forms of

16   benefit that we discussed and whether he

17   obtained any benefit politically from

18   your representation.

19        MR. LEVY:  Is there any other

20   claimed relevance here?

21        MR. CARREON:  I think that is it.

22   Well, it may very well be.  The

23   additional thing will be that some

24   extreme members of the Libertarian

25   Party, for example, they have felt to

```
 1    have sort of an institutional dislike of

 2    the legal profession that they have

 3    expressed, and so I am interested in

 4    whether Mr. Recouvreur's animus towards

 5    Mr. Carreon extends to the legal

 6    profession at large.

 7         MR. LEVY:  Is there any other claim

 8    of relevance here?

 9         MR. CARREON:  I think that is all

10    we got.

11         MR. LEVY:  I have already sort of

12    delivered myself of a series of reasons

13    and I don't need to repeat that, right?

14         MR. CARREON:  No.  If we have a

15    dispute about it, we have a dispute

16    about it.

17         MR. LEVY:  Yes, and in objecting

18    and in instructing Mr. Recouvreur not to

19    answer, I am referring back to what we

20    discussed previously although with

21    respect to this particular exhibit and

22    the questions you are asking, I would

23    simply suggest that using the power of

24    the state to compel an individual to

25    answer an inquisition about his
```

```
 1          political beliefs and how they bear on

 2          his decision to make fun of a lawyer on

 3          the Internet based on what the lawyer

 4          has done in the past, that that is, I

 5          would say, an independent violation of

 6          the first amendment to compel that kind

 7          of answer when the answer has absolutely

 8          no relevance to the issue remaining to

 9          be decided in this case, and therefore,

10          Mr. Recouvreur, I am instructing you not

11          to answer the question for that reason

12          and the reasons previously stated near

13          the beginning of the deposition.

14   BY MR. CARREON:

15          Q    Mr. Recouvreur, returning to the

16   previous topic that we discussed, are there

17   any other injuries besides the stress of

18   being contacted by a reporter and the

19   restriction of what you have claimed as your

20   first amendment rights that you wanted to

21   protect yourself from by filing the lawsuit?

22          MR. LEVY:  I am sorry?

23          THE WITNESS:  The question is not

24          clear to me.

25   BY MR. CARREON:
```

1
Paul Alan Levy, pro hac vice
Public Citizen Litigation Group
2
1600  20th Street, N.W.
Washington, D.C. 20009
3
(202) 588-1000
plevy@citizen.org

4
Catherine R. Gellis, California Bar #251927
5
P.O. Box 2477
Sausalito, California 94966
6
(202) 642-2849
cathy@cgcounsel.com

7
Attorneys for Plaintiff

8                              UNITED STATES DISTRICT COURT
9                         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
CHRISTOPHER RECOUVREUR,                    )
                                           )    No. 3:12-cv-03435
11
                    Plaintiff,             )
                                           )    **PLAINTIFF'S RESPONSES**
12
          v.                               )    **AND ANSWERS TO**
                                           )    **DEFENDANT'S REQUESTS**
13
CHARLES CARREON,                           )    **FOR PRODUCTION**
                                           )    **OF DOCUMENTS**
14
                    Defendant.             )

15                                **GENERAL OBJECTIONS**

16      Plaintiff objects that the Rule 26(f) conference has never been held in this case, and that defendant

17 has never made any initial disclosures.  Consequently, under Rule 26(f), any discovery requests are

18 premature. In granting an extension of time for defendant to respond to the motion for an award of fees, the

19 Court noted that one of the reasons why an extension was sought was to seek discovery, but at the same time

20 the Court indicated that "extensive discovery is unnecessary and a waste of resources." Even to the extent

21 that the Court's order contemplated the possibility of some discovery, the discovery sought here ranges far

22 further than the limited scope contemplated by the Court's order.

23      Plaintiff objects to the Requests for Production of Documents to the extent they seek information

24 protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the right to

25 privacy, or any other rule of privilege or confidentiality provided by law.  The inadvertent production of a

26 privileged or otherwise protected document in response to the Request for Production shall not be deemed

27 to waive the privilege or protection with respect to that document or any other document.

28      Plaintiff objects to the Requests for Production of Documents to the extent that they contain requests,

22.  Please produce each and every Document Identified in your response to Interrogatory #22.

**Partial Objection and Partial Answer:** Subject to relevance objections as detailed in the responses to admissions and the relevant interrogatory, plaintiff is providing the portions of retainer documents that address the financial arrangements in the litigation because defendant has stipulated that release of the redacted retainers does not waive the attorney-client privilege and work-product protection for other parts of the documents, and for other communications.   With respect to those portions, or as to the entire documents absent an agreement on non-waiver, plaintiff objects on attorney-client privilege and work-product grounds.

23.  Please produce each and every Document Identified in your response to Interrogatory #23.

**Does not apply**

24.  Please produce each and every Document Identified in your response to Interrogatory #24.

**Objection:** Each of the documents filed in this case, and copies of communications from defendant to plaintiff through his counsel, or to plaintiff's employer, are already in defendant's possession.  It would be needlessly burdensome for plaintiff to print and supply additional copies to defendant.

25.  Please produce each and every Document Identified in your response to Interrogatory #25.

**Does not apply**

26.  If you denied RFA.

This request for production is unintelligible.

27. Please produce all records for telephone number 510-292-1354, or any other telephone number that you use, that record communications with any of the following persons, including telephone conversations, text messages, emails, images, and videos:

**Objection:** To the extent that this request for production includes plaintiff's counsel within the definition of "you," plaintiff objects to being required to provide telephone records that list all communications that

his attorneys have had, or indeed, all communications that plaintiff has had with his attorneys. It is further noted that emails are not sent via phone numbers, but through email addresses. The conversations themselves are all work-product, and many of them are covered by the attorney-client privilege as well. The records showing the time of making the calls do not have any relevance to the attorney fee application that remains to be decided in this case. Moreover, it would be unduly burdensome to have to provide records of each such conversation. To the extent that this document request amounts to a request that plaintiff provide information about the timing of each of his telephone calls, plaintiff objects to the effort to obtain answers to more than the 25 interrogatories to which defendant is limited by the rules, as well as on relevance grounds.

### a. Paul Levy

**Objection:** Each of plaintiff's telephone communications with Mr. Levy that could have any conceivable bearing on this case was an attorney-client communication, whose contents would be subject to either the attorney-client privilege, the work product privilege, or both. It would be unduly burdensome to have to provide records of each such conversation. Nor is this information likely to lead to the discovery of relevant evidence, particularly because the Court has decided that extensive discovery is not to be permitted and the current discovery cannot be justified on the theory that it will provide the basis for further discovery efforts. During the parties' discovery conference, defendant explained that he wanted documentation of telephone calls between Recouvreur's phone number and Mr. Levy because it matters whether Mr. Levy called Recouvreur first or whether Recouvreur called Mr. Levy first. But when counsel suggested that, in that case, all defendant needs is the record of the first call, he responded that he needed documentation of all the calls, because that is relevant to his theory that Mr. Levy was conducting the litigation without any input from Recouvreur. Therefore, no records are being produced.

### b. Catherine Gellis

**Objection:** Any telephone communications with Ms. Gellis that could have any conceivable bearing on this case was an attorney-client communication, whose contents would be subject to either the attorney-client privilege, the work product privilege, or both. It would be unduly burdensome to have to provide records

of each such conversation.   Nor is this information likely to lead to the discovery of relevant evidence, particularly because the Court has decided that extensive discovery is not to be permitted and the current discovery cannot be justified on the theory that it will provide the basis for further discovery efforts. Therefore, no records are being produced.  Subject to this objection, there are no records of communications for telephone number 510-292-1354 with Ms. Gellis.

         c.  Kenneth White

**Objection:**  There is a record of only one telephone call between telephone number 510-292-1354 and Kenneth White, on the morning of June 22, 2012.  This was an attorney-client communication because I was seeking his legal advice, and the telephone record showing the call is not in any way relevant to the attorney fee application that remains to be decided in this case.   Records of communications with Kenneth White have no relevance to  the attorney-fee issues that are the only issues that remain to be decided in this case. Nor is this information likely to lead to the discovery of relevant evidence, particularly because the Court has decided that extensive discovery is not to be permitted and the current discovery cannot be justified on the theory that it will provide the basis for further discovery efforts.   Therefore, no records are being produced.

         d.  Matt Inman

None.

         e.  Registrar.com

None.

28.  Please produce all of your email, instant messenger, private messages, or other communications with:

**Objection** To the extent that this document request amounts to a request that plaintiff provide information about the timing of all of my emails with specified individuals, plaintiff objects to the effort to obtain answers to more than the 25 interrogatories to which defendant is limited by the rules, as well as on relevance grounds.

a. Register.com

Register.com forwarded defendant's initial threat of litigation to plaintiff.  That document is not being produced because defendant already has it (defendant is, indeed, its author).  Register.com has sent plaintiff various marketing emails, and plaintiff's counsel have communicated with register.com's counsel about its failure to restrict access to plaintiff's identifying information.  These documents are not being produced because they are neither relevant to the attorney fee issues that remain to be decided in this case, nor likely to lead to the discovery of relevant evidence, particularly because the Court has decided that extensive discovery is not to be permitted and the current discovery cannot be justified on the theory that it will provide the basis for further discovery efforts.   In addition, the communications are protected from discovery as protected attorney work product, related both to this case and to a possible lawsuit against Register.com.

b. Popehat.com, or any agents of Popehat.com

**Objection:**  Plaintiff's only communications have been with Kenneth White. *See* below.

c. Kenneth White

**Objection:**  Every written communication with Kenneth White involved requests for legal advice in this case, discussion of the issues in the case, and his legal advice in the case, and hence is within the attorney-client privilege and work-product protection. Moreover, no fees are sought for time spent by Kenneth White on this litigation. Copies of those emails have no relevance to the attorney-fee issues that are the only issues that remain to be decided in this case. These documents are not being produced because they are neither relevant to the attorney fee issues that remain to be decided in this case, nor likely to lead to the discovery of relevant evidence, particularly because the Court has decided that extensive discovery is not to be permitted and the current discovery cannot be justified on the theory that it will provide the basis for further discovery efforts. Therefore, no records are being produced

d. Matt Inman

None.

e. Indiegogo.com

**Objection:** Plaintiff's only communications with Indiegogo related to small donations that plaintiff made for various causes. The donations are neither relevant to the attorney fee issues that remain to be decided in this case, nor likely to lead to the discovery of relevant evidence, particularly because the Court has decided that extensive discovery is not to be permitted and the current discovery cannot be justified on the theory that it will provide the basis for further discovery efforts. Plaintiff also objects to defendant's attempt to use government power to compel disclosure of the causes plaintiff has chosen to support. Therefore, no records are being produced

f. The Bear Love Campaign

**Objection:** There are no documents, other than as described in response to paragraph 28(e). The donations are neither relevant to the attorney fee issues that remain to be decided in this case, nor likely to lead to the discovery of relevant evidence, particularly because the Court has decided that extensive discovery is not to be permitted and the current discovery cannot be justified on the theory that it will provide the basis for further discovery efforts. Plaintiff also objects to defendant's attempt to use government power to compel disclosure of the causes plaintiff has chosen to support.

g. Dave Felton, registrant of CharlesCarrion.com

**Objection:** Plaintiff exchanged four emails with Dave Felton in the middle of July, 2012, but none of them are either relevant to the attorney fee issues that remain to be decided in this case, nor likely to lead to the discovery of relevant evidence, particularly because the Court has decided that extensive discovery is not to be permitted and the current discovery cannot be justified on the theory that it will provide the basis for further discovery efforts. Plaintiff objects to defendant's attempt to use government power to compel disclosure of his communications with another individual who chose to create a parody of Charles Carreon.

29. Please produce all of your Internet postings regarding Defendant and Charles-Carreon.com, including but not limited to postings on:

a. Popehat.com

1       b. Facebook.com

2       c. Twitter.com

3       d. Boingboing.com

4       e. Indiegogo.com

5       f. Techcrunch.com

6       g. Techdirt.com

7       h. ArsTechnica.com

8       i. Any other website

9    **Objection and Answer:** Plaintiff does not have possession, custody or control of any such postings.

10   Defendant is just as able to go looking for them online as is plaintiff. To the extent that this document

11   request amounts to a request that plaintiff identify all of his Internet postings about defendant, he objects to

12   the effort to obtain answers to more than the 25 interrogatories to which defendant is limited by the rules,

13   as well as on the ground that the postings are neither relevant to the attorney fee issues that remain to be

14   decided in this case, nor likely to lead to the discovery of relevant evidence, particularly because the Court

15   has decided that extensive discovery is not to be permitted and the current discovery cannot be justified on

16   the theory that it will provide the basis for further discovery efforts. Plaintiff objects to defendant's attempt

17   to use government power to compel disclosure of his First-Amendment protected speech about Charles

18   Carreon.

19                                 /s/ Paul Alan Levy

20                             Paul Alan Levy (pro hac vice)
                          Julie Murray

21                             Public Citizen Litigation Group

22                             1600  20th Street NW
                          Washington, D.C. 20009

23                             (202) 588-1000

24                               /s/ Catherine R. Gellis
                          Catherine R. Gellis, California Bar #251927

25                             P.O. Box 2477

26                             Sausalito, California 94966
                          (202) 642-2849

27                             cathy@cgcounsel.com

28   March 8, 2013                   Attorneys for Plaintiff



**Paul Alan Levy**

| | |
|---|---|
| **From:** | Paul Alan Levy |
| **Sent:** | Tuesday, March 19, 2013 6:52 AM |
| **To:** | Charles Carreon, Esq. (chascarreon@gmail.com); cathy@cgcounsel.com; Julie Murray |
| **Cc:** | Allison Zieve |
| **Subject:** | Violation of Protective Order, Docket Item 50, and of the Redaction Requirement in ECF filings |
| **Attachments:** | DN 50 Signed Protective Order PCLG Documents with Levy Salary.pdf |

Charles, the protective order to which you agreed, and which Judge Seeborg adopted as Docket Item No. 50, required you to keep the amount of my salary confidential;  you were not to reveal that information in any filing, but you were, rather, required to refrain from disclosing the information unless the court had first ruled that the information was relevant, and even then, you were required to file the document under seal.

However, in the papers that you have just filed, you have attached as Exhibit 5 the W-2 form that was provided to you in discovery, and which reveals the amount of my salary; the dollar amount is not redacted.  You have also mentioned the amount of my salary in your brief, at page 16, lines 17-19.  You have not sought or obtained any prior ruling from Judge Seeborg that this information is relevant.

Please take immediate steps to have Exhibit 5 stricken from the record, to have your brief opposing attorney fees stricken from the record and replaced by a new brief that does not contain the two sentences beginning Section H(1) of your brief.

We will deal later with any other consequences of your violation of the protective order.

**Paul Alan Levy**

| | |
|---|---|
| **From:** | Paul Alan Levy |
| **Sent:** | Tuesday, March 19, 2013 11:06 AM |
| **To:** | 'Gina_Agustine@cand.uscourts.gov'; Corinne_Lew@cand.uscourts.gov |
| **Cc:** | Charles Carreon, Esq. (chascarreon@gmail.com; cathy@cgcounsel.com; Julie Murray |
| **Subject:** | Unredacted filing last night in violation of protective order in Case 3:12-cv-03435-RS Recouvreur v. Carreon |
| **Attachments:** | DN 50 Signed Protective Order PCLG Documents with Levy Salary.pdf |

I am writing with an urgent request that the Court strike from the record two documents that defendant Carreon filed late last night in Case No. 3:12-cv-03435-RS in violation of a protective order to which Mr. Carreon agreed, and which Judge Seeborg issued on March 7 as Docket Item No. 50 (attached). Mr. Carreon had served a third-party subpoena on Public Citizen, seeking documents that would reveal my salary. Under the protective order, Mr. Carreon was required to keep the amount of my salary confidential. He was not to reveal that information in any filing; rather, he was required to refrain from disclosing the information unless the Court had first ruled that the information was relevant, and even then, he was required to file the document under seal.

However, in the papers that Mr. Carreon filed, he attached as Exhibit 5 the W-2 form that was provided to him in discovery (Docket Item 54-2), exactly as he received it – with my social security number and certain other personal information redacted, but with the amount of my salary disclosed; the dollar amount is not redacted. Mr. Carreon also mentioned the amount of my salary in his brief, at page 16, lines 17-19 (Docket Item 54). Defendant has neither sought nor obtained any ruling from Judge Seeborg that this information is relevant.

I have asked Mr. Carreon to take immediate steps to have Exhibit 5 stricken from the record, and to have his brief opposing attorney fees stricken from the record and replaced by a new brief that does not contain the two sentences beginning Section H(1) of his brief. But, I have not yet received a response.

The matter is especially urgent because it is my understanding that a number of people are following this litigation closely, and are opening documents as they are newly e-filed so that they will be deposited in RECAP, the public archive of court filings that is accessible free of charge. Once a RECAP user looks at either of these documents, they will be available publicly outside the court's electronic docket, and the violation of the protective order will be irreversible. For the same reason, I am hoping that the matter can be addressed administratively because, in my experience, filing a motion for redaction just tends to call public attention to the matter sought to be redacted.

In sum, I am asking the Court to remove Documents Nos. 54 and 54-2 from the record, pending replacement filings by Mr. Carreon.

**Paul Alan Levy**

| | |
|---|---|
| **From:** | Charles Carreon, Esq. <chascarreon@gmail.com> |
| **Sent:** | Tuesday, March 19, 2013 2:05 PM |
| **To:** | Gina_Agustine@cand.uscourts.gov; Paul Alan Levy |
| **Subject:** | Re: Unredacted filing last night in violation of protective order in Case 3:12-cv-03435-RS Recouvreur v. Carreon |

Dear Ms. Augustine:

I write to confirm that Mr. Levy is correct, and I failed to redact the dollar amount from the declaration and referred to it in the brief. This was an inadvertent error due to fatigue, and will be corrected immediately with a filing of a notice of errata. Of course I cannot remove the misfiled documents from ECF, and join in Mr. Levy's request that you do so.

Regards,
Charles Carreon

On Tue, Mar 19, 2013 at 8:05 AM, Paul Alan Levy <plevy@citizen.org> wrote:

I am writing with an urgent request that the Court strike from the record two documents that defendant Carreon filed late last night in Case No. 3:12-cv-03435-RS in violation of a protective order to which Mr. Carreon agreed, and which Judge Seeborg issued on March 7 as Docket Item No. 50 (attached). Mr. Carreon had served a third-party subpoena on Public Citizen, seeking documents that would reveal my salary. Under the protective order, Mr. Carreon was required to keep the amount of my salary confidential. He was not to reveal that information in any filing; rather, he was required to refrain from disclosing the information unless the Court had first ruled that the information was relevant, and even then, he was required to file the document under seal.

However, in the papers that Mr. Carreon filed, he attached as Exhibit 5 the W-2 form that was provided to him in discovery (Docket Item 54-2), exactly as he received it – with my social security number and certain other personal information redacted, but with the amount of my salary disclosed; the dollar amount is not redacted. Mr. Carreon also mentioned the amount of my salary in his brief, at page 16, lines 17-19 (Docket Item 54). Defendant has neither sought nor obtained any ruling from Judge Seeborg that this information is relevant.

I have asked Mr. Carreon to take immediate steps to have Exhibit 5 stricken from the record, and to have his brief opposing attorney fees stricken from the record and replaced by a new brief that does not contain the two sentences beginning Section H(1) of his brief. But, I have not yet received a response.

The matter is especially urgent because it is my understanding that a number of people are following this litigation closely, and are opening documents as they are newly e-filed so that they will be deposited in RECAP, the public archive of court filings that is accessible free of charge. Once a RECAP user looks at either of these documents, they will be available publicly outside the court's electronic docket, and the violation of the

protective order will be irreversible.  For the same reason, I am hoping that the matter can be addressed administratively because, in my experience, filing a motion for redaction just tends to call public attention to the matter sought to be redacted.

In sum, I am asking the Court to remove Documents Nos. 54 and 54-2 from the record, pending replacement filings by Mr. Carreon.

--
Charles Carreon, Esq.
2165 S. Avenida Planeta
Tucson, AZ 85710
Tel 1: 520-841-0835
Tel 2: 520-762-7314
Fax: 520-843-2083

This message may contain attorney-client and/or attorney work-product privileged material.  If you are not the intended recipient, please first notify the sender and then delete the message and any attachment.  Inadvertent disclosures shall not work a waiver of any privilege.

1  Paul Alan Levy, pro hac vice
   Public Citizen Litigation Group
2  1600  20th Street, N.W.
   Washington, D.C. 20009
3  (202) 588-1000
   plevy@citizen.org
4
   Catherine R. Gellis, California Bar #251927
5  P.O. Box 2477
   Sausalito, California 94966
6  (202) 642-2849
   cathy@cgcounsel.com
7
   Attorneys for Plaintiff
8
                    UNITED STATES DISTRICT COURT
9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10  CHRISTOPHER RECOUVREUR,          )     No. 3:12-cv-03435
                                     )
11              Plaintiff,           )     **AFFIDAVIT OF CATHERINE GELLIS**
                                     )
12         v.                        )
                                     )
13  CHARLES CARREON,                 )
                                     )
14              Defendant.           )

15      1. My name is Catherine R. Gellis.  I am local counsel for plaintiff in this case.

16      2. I regularly record my time on my personal computer.  My records reflect that, between December

17  30 and March 21, I spent approximately 26.5 hours representing plaintiff in this case.  A copy of the relevant

18  time entries is attached.

19

20                          I hereby certify under penalty of perjury that the foregoing is true and
                            correct.  Executed on March 22, 2013.
21

22  _____
                            Catherine R. Gellis
23

24

25

26

27

28

                                        -1-                          Gellis Affidavit

GELLIS TIME 2013

1/4/13 - Discuss Register.com matter with P. Levy - .1
1/10/13 - Review email from C. Carreon re: proposed stip - .1
1/11/13 - Review email from C. Carreon re: proposed stip - .1
1/15/13 - Review C. Carreon's ex parte motion for an extension; draft opposition - .8
1/16/13 - Review opposition to motion for extension - 1.0
1/17/13 - Review opposition to motion for extension - 1.0
1/22/13 - Review order for extension - .2

2/6/13 - Discuss discovery response with P. Levy - .3
2/11/13 - Discuss discovery response - 1.0
2/12/13 - Discuss discovery response; research - 2.5
2/13/13 - Research discovery response - 3.0
2/14/13 - Discuss discovery response - 1.0
2/19/13 - Discuss discovery response - .4
2/20/13 - Review discovery response - .1
2/22/13 - Review subpoenas - .2
2/25/13 - Discuss Recouvreur deposition - .1
2/26/13 - Discuss Recouvreur deposition - .1
2/27/13 - Discuss Recouvreur deposition - .1

3/1/13 - Discuss discovery response - .5
3/6/13 - Discuss deposition - .2
3/7/13 - Prepare client for deposition - 1.0
3/8/13 - Prepare to defend client deposition - .5
3/8/13 - Defend client deposition - 2.5
3/8/13 - Edit discovery - 2.5
3/9/13 - Review deposition record - 2
3/12/13 - Discuss deposition with counsel - 1
3/13/13 - Discuss deposition with counsel - .2
3/19/13 - Review opposition to motion for fees; discuss protective order violation - 1.3
3/20/13 - Discuss opposition to motion for fees, Exhibit 4 - .2
3/21/13 - Edit reply to opposition to motion for fees - 2.0
3/21/13 - Edit affidavits for P. Levy and myself - .5