IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER RECOUVREUR, | No. C 12-03435 RS |
| Plaintiff, | **ORDER GRANTING IN PART PLAINTIFF'S MOTIONS FOR ATTORNEY FEES** |
| v. | |
| CHARLES CARREON, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Recouvreur has filed two separate motions seeking award of attorney fees in the total amount of $77,765.25. The first seeks fees incurred as a result of service attempts and time spent on the attorney fee motion under Federal Rule of Civil Procedure 4(d)(2), and the second seeks fees as a prevailing party under the Lanham Act. Pursuant to Civil Local Rule 7-1(b), this matter is appropriate for disposition without oral argument, particularly in this instance as any further expense associated with oral argument would simply compound the problem. For the following reasons, plaintiff's motion under Rule 4(d)(2) is granted and plaintiff's motion under the Lanham Act is granted in part and denied in part.

## II. BACKGROUND

This matter arises from a complaint seeking a declaration that plaintiff Recouvreur's satirical website, www.charles-carreon.com, does not infringe the trademark that defendant Charles Carreon has on his own name. Before this lawsuit was initiated, Carreon sent a letter claiming infringement and threatening litigation for trademark infringement and cybersquatting. Plaintiff then retained counsel, who was unable to resolve the dispute informally. This case followed. Seven days after filing, a request for waiver of summons was mailed to defendant at 2165 S. Avenida Planeta, Tucson, Arizona 85710, the address shown on Carreon's listing with the California Bar and on this Court's ECF filings. Carreon declined to waive service of the summons and complaint. After several unsuccessful attempts at service, plaintiff's counsel effected service on defendant in person outside a courtroom following a hearing in this district. On November 20, 2012, plaintiff's counsel sought to meet and confer with defendant regarding plaintiff's first motion for expenses, but defendant refused to pay any service expenses.

Shortly after plaintiff filed a motion for expenses and attorney fees, defendant made an offer of judgment under Rule 68 of the Federal Rules of Civil Procedure. The offer provides that plaintiff's use of the domain name and current use of the website will be deemed not to violate defendant's rights and is protected under the First Amendment. It further provides that defendant is not entitled to an injunction against plaintiff and that plaintiff shall take "a total money judgment inclusive of costs in the amount of $725, being the sum of the filing fee and service costs claimed." Plaintiff accepted this offer of judgment on December 17, 2012.

Prior to the Court issuing an Order on the first motion for fees and expenses, plaintiff filed a second motion for fees, this time as a prevailing party under the Lanham Act. Defendant sought a 120-day extension to respond to the motion for purposes of conducting additional discovery and to obtain Amicus Briefs from the International Trademark Association. Plaintiff opposed any such extension. This Court granted a 60-day extension for the filing of any response.

In his motion, plaintiff declares Mr. Levy is a public interest lawyer and that the reasonable rate for his services depends on the prevailing market rate. In attached affidavits, Levy claims an hourly rate of $700. Ms. Gellis is a lawyer in private practice whose ordinary billing rate is $300 per hour. Affidavits record a total of $40,115 in fees leading up to the filing of the second motion, including fees incurred in connection with the first motion under Rule 4(d)(2), and an additional $36,490 in fees and $1,160.25 in expenses responding to defendant's requested discovery and preparing plaintiff's reply to the second motion. Thus, plaintiff seeks a total of $77,765.25 for the work done on these two motions.

### III. LEGAL STANDARD

Rule 68 of the Federal Rules of Civil Procedure provides that a "party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." The Supreme Court has interpreted this language to mean that "[i]f an offer recites that costs are included or specifies an amount for costs, and the plaintiff accepts the offer, the judgment will necessarily include costs; if the offer does not state that costs are included and an amount for costs is not specified, the court will be obliged by the terms of the Rule to include in its judgment an additional amount which in its discretion, [citation omitted], it determines to be sufficient to cover the costs." *Marek v. Chesny*, 473 U.S. 1, 6 (1985). The Court explained that such construction is appropriate because "[i]f defendants are not allowed to make lump-sum offers that would, if accepted, represent their total liability, they would understandably be reluctant to make settlement offers." *Id.* at 6-7. The Court then addressed whether the term "costs" as used in Rule 68 includes attorney fees. It concluded that "the most reasonable inference is that the term 'costs' in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority." *Id.* at 9. Thus, the Court found that, since Congress explicitly provided for recovery of attorney fees as part of "costs" in a §1983 action, such fees are subject to the fee shifting provision of Rule 68, and included in the acceptance of any offer of judgment. *Id.*

12-03435 ORDER

The Ninth Circuit has stated that "where the underlying statute does not make attorney fees part of costs, it is incumbent on the defendant making a Rule 68 offer to state clearly that attorney fees are included as part of the total sum for which judgment may be entered if the defendant wishes to avoid exposure to attorney fees in addition to the sum offered plus costs." *Sea-Coast Foods v. Lu-Mar Lobster & Shrimp*, 260 F.3d 1054, 1060 (9th Cir. 2001) (quoting *Nusom v. Comh Woodburn*, 122 F.3d 830, 834 (9th Cir. 1997)). The Ninth Circuit has similarly held that an offer of judgment is construed against the drafter. *Holland v. Roeser*, 37 F.3d 501, 504 (9th Cir. 1994).

Under Rule 4(d)(2) of the Federal Rules of Civil Procedure, if a defendant located within the United States fails to waive service of process, a "court must impose on the defendant: (A) the expenses later incurred in making service; and (B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses." Fed. R. Civ. Pro. 4(d)(2)(A)-(B). The Lanham Act provides that the "court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. §1117(a)(3). This sentence is included at the end of a paragraph entitled "the costs of the action." *Id.*

## IV. DISCUSSION

*A. Attorney Fees under the Lanham Act*

Upon accepting defendant's offer of judgment, plaintiff became the prevailing party, as the judgment closely reflected plaintiff's claims for relief. *See Sea Coast Foods v. Lu-Mar Lobster & Shrimp*, 260 F.3d 1054, 1059-60 (9th Cir. 2001). Plaintiff contends that, as a result, he is entitled to attorney fees under the fee shifting provision of the Lanham Act, 15 U.S.C. § 1117(a). Plaintiff argues this case was "exceptional," as defendant's litigation threats for trademark infringement and cybersquatting claims were groundless.

Defendant first opposes plaintiff's motion, arguing the traditional American Rule applies, in which litigants "pay their own attorneys' fees, regardless of the outcome of the proceedings." *Camacho v. Bridgeport Fin. Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). He contends this case

cannot be found to be an exception to that traditional rule, as the action was filed under the Declaratory Judgment Act, 28 U.S.C. § 2201, which does not have a fee-shifting provision. While declaratory relief was the remedy sought, the claim for relief arose under the Lanham Act. Indeed, this Court would not have jurisdiction over this matter without the presence of a federal question, in the form of the Lanham Act. Defendant offers no support for the proposition that the statute supporting the underlying claim should be ignored in favor of the statute providing for the legal remedy. He has pointed to no authority to suggest that when only declaratory relief is sought, as opposed to damages or injunctive relief, the Declaratory Judgment Act supersedes the act providing for the underlying claim for relief. Without such authority, it defies logic to ignore the fee-shifting provision provided by the Lanham Act in favor of the Declaratory Judgment Act.

Defendant then argues the Lanham Act cannot apply to this action, as it only applies to trademark holders, which plaintiff is not. He reasons that, allowing non-markholders to recover would benefit a class of persons Congress had no intent to benefit. The Ninth Circuit, however, has permitted awards of fees to unregistered marks. *See, e.g.*, *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1026 (9th Cir. 1985) (finding it "would be anomalous to provide for attorneys' fees in copyright actions, 17 U.S.C. § 106, registered trademark actions, 15 U.S.C. § 1117, and patent actions, 35 U.S.C. § 285, but not in unregistered trademark actions."); *Committee for Idaho's High Desert v. Yost*, 92 F.3d 814, 825-26 (9th Cir. 1996) (allowing recovery of attorney fees in "exceptional" case of unregistered trademark infringement). Defendant responds to this precedent by arguing that, although owners of unregistered marks may be awarded fees, *unprotectable* marks cannot seek an award of fees. In support of this proposition, defendant notes that Section 2(a) of the Lanham Act, 15 U.S.C. § 1052(a) prohibits registration of any mark that "consists of . . . scandalous matter which may disparage or falsely suggest a connection with persons, living or dead, institutions, beliefs, national symbols, or bring them into contempt, or disrepute." Trademark law cannot, he asserts, grant users of

12-03435 ORDER

5

unprotectable marks standing to seek attorney fees in defending their right to use those marks. To allow otherwise, would convert the "First Amendment Shield" into a "Lanham Act Sword." The trademark at issue, however, is the name of Charles Carreon, which is registered by defendant. Plaintiff is not seeking to register a trademark, but to establish that he does not infringe on an existing one. Thus any argument about the applicability of the Lanham Act and the possible registration of plaintiff's website is inapt.

Additionally, defendant asserts his litigation threats are protected under California's Anti-SLAPP laws providing a litigation privilege codified in California Civil Code § 47(b). He notes that a "classic example" in which the privilege would apply is an "attorney demand letter threatening to file a lawsuit if a claim is not settled." *Lopez Reyes v. Kensoain & Miele, LLP*, 525 F. Supp.2d 1158, 1161 (N.D. Cal. 2007) (citing *Eisenberg v. Alameda Newspapers, Inc.,* 74 Cal.App.4th 1359, 1379–80 (1999)). Plaintiff responds that this state-law litigation privilege cannot be a defense to a federal-law claim, and that, on defendant's theory, every declaratory judgment case would be subject to dismissal on litigation privilege grounds. In *Impeva Labs., Inc. v. Sys. Planning Corp.*, a court in this district recognized that "the California litigation privilege, which bars suits based on actions a litigant has taken in court . . . cannot defeat a federal cause of action." 5:12-CV-00125-EJD 2012 WL 3647716 at *5, n4 (N.D. Cal. Aug. 23, 2012) (internal citations omitted). Additionally, another district court has found that the privilege does not bar the "use of every 'statement or publication' made in the course of a judicial proceeding," and thus statements may be used as evidence to support underlying claims, but may not form the basis of a claim. *Powertech Tech., Inc. v. Tessera, Inc.*, C 11-6121 CW, 2012 WL 3283420 (N.D. Cal. Aug. 10, 2012). At the outset, the filing of this case appeared to be no different than the filing of any other declaratory judgment case. Defendant's threatening email simply provides evidence that an actual case or controversy existed between the parties. Thus, the California litigation privilege cannot protect defendant from attorney fee liability under the Lanham Act.

12-03435 ORDER

Finally, defendant argues that, even if the Lanham Act does apply to this case, the matter cannot be considered "exceptional" such that fees are merited. He points to the fact that he raised no contentions in this litigation, let alone frivolous ones, and asserts that his decision not to pursue adversarial options cannot be used to infer that he had no defenses or counterclaims to advance. Plaintiff first argues that defendant's threats of suit for trademark infringement and cybersquatting were indeed groundless. Plaintiff asserts his satirical website was strictly non-commercial, and thus Ninth Circuit precedent requires rejection of defendant's threatened trademark claims. *See Bosley Medical v. Kremer*, 403 F.3d 672 (9th Cir. 2005) (finding no Lanham Act violation even though website contained links to pages that contained links to commercial web pages); *Nissan Motor Co. v. Nissan Computer Co.*, 378 F.3d 1002, 1017 (9th Cir. 2004) ("Although the boundary between commercial and non-commercial speech has yet to be clearly delineated, the core notion of commercial speech is that it does no more than propose a commercial transaction."). Further, there is no evidence that plaintiff registered the domain name with a "bad faith intent to profit," as required for a claim of cybersquatting under 15 U.S.C. § 1125(d)(1)(A)(i). Defendant disputes that plaintiff's website was not commercial, as it contained two links to websites that are operated for-profit. Such tangential connection to a profit-making enterprise, however, cannot be sufficient to transform plaintiff's website into a commercial activity. This argument is therefore unconvincing, and Ninth Circuit precedent regarding non-commercial websites must apply. Nevertheless, defendant's threatened litigation cannot be found to be frivolous, as he may have been able to raise debatable issues of law and fact, had he chosen to mount a defense. *See Stephen W. Boney v. Boney Services, Inc.*, 127 F.3d 821, 827 (9th Cir. 1997). Indeed, a trademark holder has the right to preserve use of the trademark for his own use. *Id.*

While defendant's threatened claims were not "exceptional" at the outset of this case, defendant's actions throughout the litigation certainly transformed this case into an "exceptional" matter, deserving of an award of attorney fees. The Ninth Circuit has stated that "bad faith or

other malicious conduct satisfies the exceptional circumstances requirement." *Boney*, 127 F.3d at 827. Evidence supports a finding of malicious conduct during the course of this case. Defendant first went to great lengths, imposing unnecessary costs on plaintiff, to avoid service. Then, in response to this motion for attorney fees under the Lanham Act, defendant engaged in unnecessary, vexatious, and costly tactics in preparation of his opposition to the motion. The Ninth Circuit discourages major litigation with respect to attorney fees. *See, e.g.*, *Camacho*, 523 F.3d at 981; *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation."). Defendant's serving of interrogatories and taking of plaintiff's deposition amounted to a mini-trial on plaintiff's motion for fees. Indeed, plaintiff incurred an additional $37,650.25 in fees and costs *after* his motion was filed. Despite this additional discovery, defendant has presented no evidence to support his initial contention that plaintiff's attorney is on a mission to "turn Internet gripe sites into profit centers for him and Public Citizen Law Group." Doc. #45, at 4. Defendant has failed to show that his additional discovery efforts led to anything other than additional frustration for plaintiff and his attorneys. Accordingly, plaintiff's efforts to respond to defendant's litigation tactics merit the imposition of a fees award.

  *B. Attorney Fees under Rule 4(d)(2)*

  Defendant argues that plaintiff's claim for fees is moot as a result of the Accepted Offer of Judgment, which included $725 in costs. Defendant asserts this Court has no subject matter jurisdiction to hear a moot issue. Plaintiff counters that an accepted offer of judgment resolves the claims on the merits of the case, but does not necessarily reach ancillary issues involving attorney fees.

  The Supreme Court has explained "that motions for costs or attorneys' fees are independent proceeding[s] supplemental to the original proceeding" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990). Although plaintiff's acceptance of the defendant's offer of judgment ended the case on the merits, it did not render moot the motion for an award of fees.

12-03435 ORDER

8

*See Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999) (explaining that "[n]o Article III case or controversy is needed with regard to attorneys' fees as such, because they are but an ancillary matter over which the district court retains equitable jurisdiction even when the underlying case is moot.").

The judgment plaintiff accepted specifically referred to the "filing fee" and "costs of service." The judgment did not refer to costs generally, but rather in a very limited sense. Thus, construing any ambiguity against the drafter, an award of fees is not precluded by the offer of judgment.

Plaintiff contends defendant's deliberate evasion of service justifies an award of attorney fees. The fee-shifting statute of the Rule 4(d)(2) provides no discretion in allowing for the collection of fees incurred as a result of any motion filed to seek recovery of expenses incurred as a result of defendant's failure to waive service. Moreover, because the motion for fees was filed prior to defendant making his offer of judgment, defendant was aware that such request was pending. Even so, the judgment offered did not clearly address attorney fees. Defendant cannot now escape the consequences of his inartful drafting. Accordingly, plaintiff's motion for attorney fees under Rule 4(d)(2) is granted.

*C. Calculation of Fees*

The Ninth Circuit determines attorney fees according to the lodestar method, in which the number of hours reasonably spent on the litigation is multiplied by a reasonable attorney fee, determined by the market in which the district court sits. *Camacho*, 523 F.3d at 979. For purposes of review, the court should provide "a concise but clear explanation of its reasons for the fee award." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986). For lawyers in private practice, the hourly rate is generally the normal billing rate. For lawyers in public service or public interest practice, the Supreme Court has stated that reasonable fees "are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455

(9th Cir. 2010) (explaining the "rates prevailing in that district for 'similar services by lawyers of reasonably comparable skill, experience, and reputation' thus furnish the proper measure of the reasonableness of the rates billed.") (quoting *Blum*, 465 U.S. at 895). The Supreme Court recognized the difficulty of determining a market rate, and explained that a party must submit evidence that the fee requested is comparable to that charged by lawyers of similar skill, experience and reputation. *Blum*, 465 U.S. at n.11.

Ms. Gellis is a lawyer in private practice whose ordinary billing rate is $300 per hour. Mr. Levy only represents clients pro bono, and has proposed an hourly rate of $700. Levy declares he has worked at the Public Citizen Litigation Group for over twenty years, with a focus on Internet free speech cases. He has spoken at several law schools and bar meetings, and has served as lead counsel on a number of trademark cases. Mark Goldowitz, a lawyer familiar with Levy's work and the market rates declares $700 is a reasonable hourly rate. An hourly rate of $700 was recently approved by this district in *Rosenfeld v. U.S. Dep't of Justice*, 2012 WL 4933317 (N.D. Cal. 2012) for an attorney of similar qualifications to Levy in a FOIA case. The Adjusted Laffey Matrix, frequently used by the District of Columbia, additionally confirms that this requested rate is reasonable for a lawyer of Levy's experience, as the calculated rate for a lawyer with over twenty years' experience is $753. Finding the requested $700 to be in line with rates for comparable lawyers, this hourly rate shall be adopted in the calculation of attorney fees.

Defendant insists that, if fees are to be awarded, they must be modest. He contends the only important document is the First Amended Complaint, and that document could not have required more than three hours for an experienced lawyer to complete. Thus, he concludes, at most an attorney fee of $200 is warranted. Defendant nowhere explains how he arrived at this figure or why such an award would be appropriate and reasonable under the circumstances. Indeed, such an award would contemplate an hourly rate of less than $70, and would ignore all work related to the planning of the case, the drafting of any motions, or responding to

12-03435 ORDER

10

1 defendant's discovery requests. As there is no basis for defendant's proposed award, it must be
2 rejected.

3 In support of his motion under Rule 4(d)(2), plaintiff provides evidence that Levy worked
4 a total of 10.7 hours and Gellis a total of 3.2 hours. This time is reasonable for the planning and
5 drafting of a motion and is not disputed by defendant. Thus a total of $8,450 in fees may be
6 awarded under plaintiff's Rule 4(d)(2) motion.

7 In support of his motion for fees under the Lanham Act, plaintiff provides evidence that
8 Levy worked an additional 38.4 hours and Gellis worked an additional 15.95 hours leading up to
9 the filing of the motion. At the time of the filing of the motion, the case had not yet become
10 "exceptional" as required under the Lanham Act. In the time leading up to the filing of the reply,
11 however, Levy spent another 43.6 hours on the case, and Gellis spent an additional 19.9 hours on
12 the case, largely as a result of defendant's discovery. A further $645 was incurred for travel to
13 the requested deposition and $515.25 was incurred for the deposition transcript. These costs are
14 carefully recorded and attached to affidavits submitted by Levy and Gellis. Finding the amount
15 of time spent to be reasonable given the demands of the defendant, it shall be compensated.
16 Thus a total of $37,650.25 may be awarded in connection with the motion for attorney fees under
17 the Lanham Act.

## V. CONCLUSION

For the foregoing reasons, plaintiff's motion for attorney fees under Rule 4(d)(2) is granted and plaintiff's motion for attorney fees under the Lanham Act is granted in part and denied in part. A total award of $46,100.25 is granted to plaintiff for attorney fees and expenses incurred in this matter.

IT IS SO ORDERED.

DATED: 4/12/13

_____
RICHARD SEEBORG
United States District Judge

12-03435 ORDER